INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, an Indiana corporation, Plaintiff–Appellee,

v.

WEST OREGON WOOD PRODUCTS, INC., an Oregon corporation, Defendant–Appellant.

No. 00–35621.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2001

Filed Oct. 5, 2001

As Amended on Denial of Rehearing Nov. 27, 2001.

---

William A. Drew, Elliott, Ostrander & Preston, P.C., Portland, Oregon, for the defendant-appellant.

Lisa E. Lear, Bullivant Houser Bailey PC, Portland, Oregon, for the plaintiff-appellee.

Laura A. Foggan, Wiley, Rein & Fielding, Washington, DC, for the amicus curiae.

Before: THOMPSON, TASHIMA and GRABER, Circuit Judges.

GRABER, Circuit Judge:

Defendant West Oregon Wood Products, Inc., appeals the district court's grant of summary judgment in favor of Plaintiff Indiana Lumbermens Mutual Insurance

Company. The district court held that Plaintiff, which provided Defendant with commercial liability insurance, had no duty to defend Defendant in a nuisance action. We affirm.

## BACKGROUND

### 1. *Procedural History*

On April 12, 1999, Finos Lunsford filed an action ("*Lunsford* Action") on behalf of himself and other plaintiffs. The complaint alleged that, since 1998, Defendant's plant had emitted gases and particulates, causing personal injury and property damage to the *Lunsford* Action plaintiffs. Defendant tendered the defense to Plaintiff, which denied any duty to defend. Plaintiff concluded that the pollution exclusions in each of its policies barred coverage for liability arising from any of the claims alleged in the *Lunsford* Action.

On June 1, 1999, Defendant demanded a defense based on the "hostile fire" exception to the pollution exclusions. Plaintiff again denied any obligation to defend on the ground that the complaint did not allege harm caused by a fire. Plaintiff then filed this declaratory judgment action, seeking a declaration that it had no duty to defend Defendant in the *Lunsford* Action. Defendant asserted two counterclaims for breach of contract in its answer: (1) for the refusal to defend the *Lunsford* Action and (2) for business interruption coverage.

On October 28, 1999, Lunsford filed a first amended complaint. It was identical to the original complaint, except that it alleged that some of the emissions included "sudden and accidental discharge of gases, smoke, fires, and other pollutants."[1] Defendant again demanded that Plaintiff provide a defense, contending that the amendment to the complaint made it clear that the "hostile fire" exception applied to the allegations in the complaint. Plaintiff still disagreed.

The district court reviewed the first amended complaint and concluded that the idea that the allegations of fires "superimposed on the original complaint" alleged "hostile fires" was "fanciful."' The court also concluded that the pollution exclusion provisions were not void for failure to comply with Oregon Revised Statute ("ORS") 742.246. Accordingly, the court granted Plaintiff's motion for summary judgment, holding that Plaintiff had no duty to defend Defendant in the *Lunsford* Action, denied Defendant's motion for partial summary judgment, and dismissed the case.

Defendant timely filed this appeal.

### 2. *Factual History*

#### A. *The Insurance Policies*

Plaintiff insured Defendant from 1995 through 1999. Each year, Plaintiff provided Defendant with two policies. The first was a common policy containing three parts: a "commercial property coverage part," a "commercial inland marine coverage part," and a "commercial general liability coverage part." The second was a commercial umbrella policy.

Each of the commercial umbrella policies excludes coverage for "[a]ny claim for 'Bodily Injury,' 'Property Damage,' 'Personal Injury,' or 'Advertising Injury' arising out of the discharge, dispersal, release, escape, or presence of pollutants anywhere in the world." The policies contain no exception to that exclusion.

The common policies for 1995–1996 and 1996–1997 provide identical commercial general liability (CGL) coverage. Both policies provide coverage for damage claims against the insured stemming from

---

1. The initial complaint had not alleged harm caused by fires.

"bodily injury" or "property damage" that occurred during the policy period. In particular, the policies cover "bodily injury" and "property damage" that (1) "is caused by an 'occurrence' that takes place in the 'coverage territory'" and (2) "occurs during the policy period." An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." They define "property damage" as:

   a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Both the common and commercial umbrella policies contain the following pollution exclusion:

*This insurance does not apply to:*

   .    .    .    .    ..

   f.  *Pollution*

   (1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   (a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   (b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   (d)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

   (i)  if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

   (ii)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

*As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.*[2]

(Emphasis added.)

The policies define pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Finally, the CGL components of the common policies for 1997–1998 and 1998–

---

**2.** The 1996–1997 policy contains some additional text between section (d)(ii) and the "hostile fire" provision. That text is not relevant to this appeal.

1999 are nearly identical to the 1995–96 and 1996–97 policies. However, the parties replaced the pollution exclusion from the earlier policies with a "Total Pollution Exclusion Endorsement." The pertinent parts of the endorsement provide:

This insurance does not apply to:

. . . . .

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

. . . . .

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

### B. *The Lunsford Complaint*

The first amended complaint contains four claims: for nuisance, for trespass, for negligence, and for strict liability. The requested remedies include (1) damages for personal injury, property damage, economic damage, and non-economic damage; and (2) injunctive relief.

The first amended complaint alleges that Defendant has knowingly emitted from its factory various pollutants from 1988 through October 28, 1999 (the date on which the first amended complaint was filed). Those emissions allegedly consisted of "gases, smoke and particulates, *including sudden and accidental discharge of* gases, smoke, *fires and other pollutants.*" (Emphasis added.) The first amended complaint further alleges that such emissions (1) "obstruct[ ] the reasonable, comfortable use and enjoyment of [Lunsford's] real property," and are thus a nuisance; (2) physically invade Lunsford's property, and that "such invasion constitutes a tres-pass"; (3) result from Defendant's failure "to use due care to avoid injuring Plaintiff and other persons in the area of the factory"; and (4) are the result of an ultrahazardous activity, rendering Defendant strictly liable for harm caused by them. The complaint also alleges that the emissions caused Lunsford to suffer damages because of physical injury, property damage, pain and suffering, diminished life expectancy, loss of earnings, diminution of value of real and personal property, and loss of enjoyment of real and personal property. The emissions allegedly must be enjoined in order to prevent future damages to Lunsford.

Finally, in order to preserve for Lunsford the opportunity to amend the complaint further to seek punitive damages, the first amended complaint alleges that Defendant's operation of its plant so as to "cast out" harmful emissions constitutes the intentional infliction of harm on Lunsford and others exposed to the emissions. Specifically, it alleges that, since 1991, various public entities have notified Defendant of the need to "abate the nuisance," but that Defendant has repeatedly refused to do so. The alleged failure of

Defendant's officers, agents and employees to cease the emissions . . . and their continuing authorization of such emissions, despite their knowledge that such emissions, cast out of the factory and into physical contact with the respiratory systems of persons inhaling them, might well injure such persons, are and were willful, wanton, reckless and malicious and . . . amount to an intent to inflict on such persons such harmful and offensive contact and any and all injuries caused thereby.

### STANDARD OF REVIEW

We review de novo a grant of summary judgment. *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 954 (9th Cir.

1999). Viewing the evidence in the light most favorable to the nonmoving party, we must decide whether there are any genuine issues of material fact and whether the district court correctly applied the pertinent substantive law. *Id.*

## ANALYSIS

### 1. *Duty to Defend*

Under Oregon law,[3] a court assesses an insurer's duty to defend an action against its insured by reviewing the complaint and the insurance policy. *Ledford v. Gutoski,* 319 Or. 397, 877 P.2d 80, 82 (1994). Looking only at the facts alleged in the complaint, the court determines whether those facts "provide a basis for recovery that could be covered by the policy." *Id.*

The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage. Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy. Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured.

*Id.* at 83 (emphasis in original) (citations omitted).

In this case, the parties focus on the 1995–1996 and 1996–1997 CGL policies, recognizing that the pollution exclusions in the 1997–1998 and 1998–1999 CGL policies, and in the umbrella policies, preclude coverage for the harm alleged in the *Lunsford* Action. The types of physical injuries and property damage alleged in the *Lunsford* complaint are among the risks covered by the 1995–1996 and 1996–1997 CGL policies. However, because the complaint alleges that those injuries resulted from Defendant's ongoing emissions of pollutants, the pollution exclusions in the relevant policies bar coverage *unless* an exception to those pollution exclusions applies. Thus, the parties' dispute centers on whether such an exception brings the allegations in the complaint back within the scope of the coverage provided by the CGL policies.

Specifically, Defendant's theory is that the allegation of damage from "sudden and accidental" fires in the first amended complaint brings the conduct alleged in the complaint within the "hostile fire" exception to the pollution exclusions in the 1995–1996 and 1996–97 policies. Defendant contends, simply, that because the complaint alleges that some of Lunsford's physical injuries and property damage stem from "sudden and accidental discharges of ... fire," there is a possibility that Lunsford's injuries came from a "hostile fire" and would be covered by the policy. This possibility of coverage is sufficient, Defendant contends, to trigger Plaintiff's duty to defend against the *Lunsford* Action.

Because the *Lunsford* Action seeks damages for "bodily injury" or "property damage" caused by Defendant's ongoing emissions of "gases, smoke and *pollutants,* including sudden and accidental discharge of gases, smoke, fires and *other pollutants,*" the plain text of the pollution exclusion in the 1995–1996 and 1996–1997 policies bars coverage for the liability alleged in the *Lunsford* Action. Defendant would be entitled to coverage if, but only if, the allegations in the first amended complaint sufficiently allege that the "bodily injury" or "property damage" derived from "heat, smoke or fumes from a hostile fire": that is, a fire that was "uncontrollable or

---

**3.** The parties agree that Oregon law applies, apparently because of a contractual choice-of- law provision.

[broke] out from where it was intended to be." The allegations do not suffice.

Paragraph 14 of the first amended complaint in the *Lunsford* Action is the key allegation on which Defendant relies. It states, as relevant:

> Defendant's operation of its factory so that such gases, smoke and particulates, including sudden and accidental discharge of gases, smoke, fires and other pollutants, are emitted into the atmosphere constitutes a nuisance....

Notably, everything "emitted" was alleged to be "pollutants."

The policies define "hostile fire." A "hostile fire" is not defined to mean "sudden and accidental." Rather, it is defined as a fire that "becomes uncontrollable or breaks out from where it was intended to be." There is no allegation in the *Lunsford* complaint that states any fact showing that any fire ever became uncontrollable or broke out from where it was intended to be. Indeed, paragraph 14 explains that the pollutants came about from "Defendant's operation of its factory" in a dirty way.

The other allegations in the *Lunsford* complaint confirm that such emissions are allegedly controllable, but that Defendant simply has failed to control them by refusing "to install an efficient pollution control system in its factory." ("Plaintiff ... alleges that there are several types of emission control systems that, if installed in Defendant's factory, would eliminate or substantially reduce polluting emissions therefrom.") Along the same lines, the request "that Defendant be enjoined from allowing said emissions of gases, smoke and pollutants, including sudden and accidental discharge of gases, smoke, fires and other pollutants" further illustrates that the *Lunsford* complaint is alleging harm from *controllable* discharges of fire. It would not make sense for a plaintiff to request an injunction barring uncontrollable events.[4]

In summary, in view of the narrowness of the first amended complaint in the *Lunsford* Action, and in view of the policies' definition of "hostile fire," we conclude that the pollution exclusion applies. The district court did not err in so holding.

### 2. *Validity of the pollution exclusion*

■ Defendant argues, in the alternative, that the pollution exclusion provisions in the 1995–1996 and 1996–1997 policies are invalid and unenforceable because they do not comply with ORS 742.246(2). That statute provides:

> (1) A fire insurer may add, to the provisions required by ORS 742.202, other conditions, provisions, and agreements not in conflict with law or contrary to public policy.
>
> (2) Any provision restricting or abridging the rights of the insured under the policy must be preceded by a sufficiently explanatory title printed or written in type not smaller than eight-point capital letters.

Defendant reasons as follows: Plaintiff is a "fire insurer" for purposes of that statute because, under the common policy, Plaintiff provided fire insurance to Defendant. Under *Fleming v. United Services Automobile Ass'n*, 329 Or. 449, 988 P.2d 378 (1999) (*Fleming I*), and on *reconsideration*, 330 Or. 62, 996 P.2d 501 (2000) (*Fleming II*), Plaintiff was required to comply with the "explanatory title" provi-

---

4. This case is distinguishable from *North Pacific Insurance Co. v. Wilson's Distributing Service, Inc.*, 908 P.2d 827 (Or.1996). There, the complaint at issue was consistent with a theory that an exception to the pollution exclusion applied. By contrast, the *Lunsford* complaint is not consistent with a theory that there was a "hostile fire" as the policies defined it.

sions of ORS 742.246(2) in *all* parts of the common policy. Plaintiff failed to comply in that the word "Exclusions" preceding the provisions listing exclusions from Coverage A in the 1995–1996 and 1996–1997 policies was not written in all capital letters. Under *Fleming*, Plaintiff's failure to comply with the statute renders the exclusions unenforceable.

We assume, without deciding, that Plaintiff was a fire insurer that was required to meet the requirements of ORS 742.246(2). Plaintiff's policies comply with the statute. The plain text of ORS 742.246(2) does not require that the explanatory title be written in all capital letters; instead it requires that all letters be "printed or written in type," the *size* of which is "*not smaller than* eight-point capital letters." (Emphasis added.) So long as all the type used for the title, whether upper-case or lower-case, is as big or bigger than eight-point capital letters, that title complies with ORS 742.246(2).

That interpretation does not, as Defendant argues, render the word "capital" meaningless. Eight-point capital letters are uniformly bigger than eight-point lowercase letters. By including the word "capital" in the statute, the legislature simply clarified exactly how big it intended the letters in the explanatory titles to be.

Defendant correctly observes that, in *Fleming I*, the Oregon Supreme Court stated that ORS 742.246 required that an explanatory title be written "in capital letters of a particular size." *Fleming I*, 988 P.2d at 382–83. However, the court's statement was dictum, because the size and type style of the explanatory title were not at issue in the case. Moreover, on reconsideration, the Oregon Supreme Court omitted the foregoing unnecessary phrase and, instead, restated the type-size requirement using the exact wording of the statute. *Fleming II*, 996 P.2d at 505.

Because type size was not at issue in *Fleming I*, and because the Oregon Supreme Court corrected its passing statement about the capital-letter requirement on reconsideration, *Fleming I* does not support Defendant's argument.

It is undisputed that the size of the type used for the word "Exclusions" in Plaintiff's CGL policies is larger than eight-point capital letters. Consequently, the title meets the requirements of ORS 742.246(2), and the pollution exclusion is not unenforceable for the reason urged by Defendant.

## CONCLUSION

Plaintiff has no duty to defend Defendant in the *Lunsford* Action, because the pollution exclusions apply and the "hostile fire" exception does not. Additionally, the "Exclusions" heading in the commercial general liability policies issued by Plaintiff complies with the type-size requirements of ORS 742.246.

AFFIRMED.