**Joseph L GEIGER, Plaintiff,**

v.

**HARTFORD LIFE INSURANCE COMPANY, Defendant.**

**No. CIV–F–03–6236 OWW DLB.**

United States District Court, E.D. California.

Aug. 12, 2004.

Richard J Papst, Law Offices of Richard Papst, Bakersfield.

Daniel W Maguire, Galton and Helm, Los Angeles.

MEMORANDUM DECISION AND OR-
DER ON DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDG-
MENT PURSUANT TO FED. R.
CIV. P. 56

WANGER, District Judge.

Defendant Hartford Life Insurance Company seeks partial summary judgment

to determine the official standard of review and applicable benefit standard under the ERISA plan at dispute in this case.

## I. INTRODUCTION

The issue is which ERISA standard should be used to judge the termination of benefits in this case. The Hartford Life Insurance Company ("Defendant") moves for a partial summary judgment that the appropriate ERISA standard under which to review the termination of the benefits of Joseph L. Geiger ("Plaintiff") is abuse of discretion. Doc. 11 ("Defendant's Memo"), filed May 18, 2004. Plaintiff opposes and alleges that the appropriate standard of review is *de novo*. Doc. 14 ("Plaintiff's Opposition"), filed June 7, 2004.

## II. PROCEDURAL HISTORY

On September 11, 2003, Plaintiff filed a complaint alleging that Defendant's decision to terminate Plaintiff's ERISA benefits "was wrongful, unreasonable, irrational, sorely contrary to the evidence[, c]ontrary to the terms of the Plan[,] and contrary to the law." Doc. 1 ("Plaintiff's Complaint") at 2, ¶ 13, filed September 11, 2003. Plaintiff alleged that he had "exhausted all of his administrative remedies or [wa]s excused from doing so." *Id.* at 2, ¶ 14.

Defendant moved for partial summary judgment alleging that the appropriate ERISA standard to review the termination of Plaintiff's benefits is abuse of discretion. *See* Defendant's Memo. Defendant submitted a declaration in support of its motion, as well as a statement of undisputed facts. Doc. 12 ("Bernacchi's Declaration"), filed May 18, 2004; Doc. 13 ("UMF"), filed May 18, 2004. Defendant also lodged two volumes of the administrative record from the ERISA hearings. Filed May 18, 2004.

Plaintiff opposed Defendant's motion, arguing that *de novo* review was the appropriate standard. *See* Plaintiff's Oppo-

sition. During a January 20, 2004 scheduling order, the court directed that the motions on the standard of review "shall be filed on or before May 17, 2004.... The opposition to the cross-motions for standard of review shall be filed by June 7, 2004." Doc. 10 at 5:10, 18–19. Plaintiff did not file a motion on the standard of review, but filed opposition on June 7, 2004. Defendant "objects to Plaintiff's opposition," and requested leave to reply:

On January 30, 2004, the Court set a scheduling order which established that cross-motions for summary judgment on the issue of the standard of review shall be filed on or before May 17, 2004. The opposition to the cross-motions were to be filed by June 7, 2004. Under the order, no replies were anticipated.

HARTFORD filed the instant motion for partial summary judgment on the standard of review, but Plaintiff did not file a cross-motion. Although the Court did not provide for reply motions in its scheduling conference order, HARTFORD requests that it consider its reply.

Doc. 19 at 1:21–2:2, filed June 14, 2004. Defendant filed a supplemental submission of the administrative record of the ERISA hearing. Doc. 17, filed June 10, 2004. Defendant also replied. Doc. 18 ("Defendant's Reply"), filed June 14, 2004.

Oral arguments were held August 9, 2004.

## III. STATEMENT OF FACTS

This case arises from Defendant's termination of Plaintiff's insurance benefits. The background history of this case is not in dispute. Plaintiff and Defendant dispute what standard of law ought to be used to judge Defendant's termination of Plaintiff's benefits.

From May of 1979 until October of 1982, Plaintiff was employed as by Occi-

dental Petroleum Corporation ("Occidental"), in the County of Kern, California, as an oil-rig foreman. Defendant's Memo at 2:5–7; Plaintiff's Opposition at 1:4–5. On or about October 5, 1982, Plaintiff became disabled while performing his duties as an oil-rig foreman and/or "any reasonable occupation." UMF at 7; Plaintiff's Opposition at 1:17–19. Plaintiff's injuries are allegedly related to his back. Plaintiff's Opposition at 1:19–21.

Plaintiff participated in Occidental's long-term disability plan ("LTD Plan") (GLT206373), which was an Employee Welfare Benefit Plan under Title 1 of ERISA and was administered and insured by Defendant. Defendant's Memo at 2:5–11; Plaintiff's Opposition at 1:5–12. Hartford issued the LTD Plan, and it became effective, on October 1, 1995. Defendant's Memo at 2:10; Plaintiff's Opposition at 1:10. Before the LTD Plan, Plaintiff had participated in a prior long-term disability plan ("Prior Plan") Occidental offered, which fell under Title 1 of ERISA as well. Plaintiff's Opposition at 1:10–12. During the first twenty-four months of disability, the Prior Plan and the LTD Plan covered employees who are "prevented by accident or illness from performing the essential duties of their own occupation." UMF at 4; Plaintiff's Opposition at 1:13–16. After the first twenty-four months, the plans cover those employees who are unable to perform the essential duties of "any reasonable occupation." *Id.*

Under the Prior Plan, Plaintiff was paid long-term disability benefits from April 3, 1983 (following a 180 day elimination period) through October 1, 1995, when the Prior Plan was replaced by the LTD Plan. UMF at 8; Plaintiff's Opposition at 1:22–25. Under the LTD Plan, Plaintiff was paid long-term disability benefits from October 1, 1995 until March 31, 2002, when Defendant informed him "that because the evidence did not support an ongoing disability, it was terminating his claim." UMF at 9; Plaintiff's Opposition at 1:22–25. Plaintiff first received notice of Defendant's intention to cancel his benefits on or about March 25, 2002. Plaintiff's Opposition at 1:26–27. Plaintiff appealed Defendant's termination, but this appeal was denied. UMF at 9. On or about March 2003, Defendant notified Plaintiff that its decision to terminate benefits was final. Plaintiff's Opposition at 2:3–4. Plaintiff filed a complaint against Defendant on September 11, 2003.

Plaintiff and Defendant dispute which ERISA standard should be used to judge the termination of benefits in this case. Defendant alleges, and Plaintiff does not dispute, that "a denial of benefits challenge under Section 1132(a)(1)(B) will be generally reviewed under a *de novo* standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine the eligibility for benefits or to construe the plan's terms, in which case a deferential standard of review is appropriate." Defendant's Memo at 5:16–21. Defendants allege that "a deferential standard of review is appropriate" because the LTD Plan (p. 17) states: "Who interprets policy terms and conditions? The Hartford has full and exclusive authority to determine eligibility for benefits and to construe and interpret all terms and provision for the Group Insurance Policy and Prior Plan." UMF at 11. Plaintiff opposes, and in support of the *de novo* standard cites the following passage from the "Prior Plan":

> Notwithstanding any provision in your booklet-certificate to the contrary, *you will receive the same benefits for Disability under this Policy which you would have been entitled to receive under the Prior Plan, had the Prior Plan continued in full force and effect.* You will obtain no additional benefits, and are subject to no additional limitations,

exclusions or offsets other than those provided under the Prior Plan.

Prior Plan means the the [sic] Occidental Petroleum Corporation Long–Term Disability plan provided by Occidental Petroleum Corporation on September 30, 1995.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, or provisions of the policy, other than as herein stated.

Bernacchi's Declaration, Exh. 1 at 4 (emphasis added); *see also* Plaintiff's Opposition at 3:1–28. Plaintiff alleges:

By the very language used, any provision used to grant discretion or authority to the PLAN administrator is null and void without proof that the same identical discretion or authority had been granted to the administrator of the PRIOR PLAN at the time that Plaintiff became disabled. INSURER has provided no proof that the PRIOR PLAN granted any discretion or authority to the administrator. In fact, not [sic] such language exists in the PRIOR PLAN .... Without such proof, the INSURER has failed to meet the required burden.

Plaintiff's Opposition at 3:13–19. According to Plaintiff's theory, because the previous plan contained no grant of discretion to the administrator, and because Plaintiff was entitled to the same benefits under the LTD Plan to which he was entitled

under the Prior Plan, Plaintiff is not subject to the "exclusive authority" of the LTD Plan and, hence, the termination of his benefits must be judged under a *de novo* standard of review. The dispute between Plaintiff and Defendant focuses upon the interpretation of the meaning of these provision of the Prior and LTD Plans to determine which standard of review should be used to judge the termination of Plaintiff's benefits.

### IV. STATEMENT OF UNDISPUTED MATERIAL FACTS

**A. Defendant's Statement of Undisputed Material Facts**

1. At all times relevant to this litigation, Joseph L. Geiger ("Geiger" or "Plaintiff") worked for Occidental Petroleum Corporation ("Occidental") as an oil rig foreman and was a participant in the Employee Welfare Benefit Plan that Occidental offered its employees.

 1. Undisputed.[1]

2. The long-term disability plan ["LTD"] offered by Occidental is an Employee Welfare Benefit Plan under Title I of ERISA, administered and insured by defendant Hartford Life and Accident Insurance Company ("Hartford").

 2. Undisputed.

---

1. According to Local Rule 56–260 (Motions for Summary Judgement or Summary Adjudication), the opposition to the motion for summary judgment shall file "itemized fact in [a] Statement of Undisputed Facts." As section b of the rule says:

Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts which are undisputed and deny those which are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document re-

lied upon in support of that denial. The opposing party may also file a concise "Statement of Disputed Facts," and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication. The opposing party shall be responsible for the filing with the Court of all evidentiary documents cited in the opposing papers. If a need for discovery is asserted as a basis for denial of the motion, the party opposing the motion shall provide a specification of the particular facts on which discovery is to be had or the issues on which discovery is necessary.

3. Under the terms of the LTD plan, eligible employees received disability benefits, minus off-sets. For those individuals who become disabled prior to age 60, benefits are payable through age 65.

3. Undisputed.

4. During the first 24 months of disability, the policy covers employees who are prevented by accident or illness from performing the essential duties of their own occupation. After the first 24 months, the disability definition changes from own occupation to any reasonable occupation.

4. Undisputed.

5. The LTD plan documents include a booklet-certificate setting forth the terms of the long-term disability plan. Attached to the booklet-certificate is a statement of ERISA rights and claim procedures. These two documents combine to form the Summary Plan Description ("SPD") or the Occidental Petroleum Corporation Long-Term Disability Plan.

5. Undisputed.

6. The SPD identifies the plan sponsor as Occidental. It also identifies the claims administrator as Hartford.

6. Undisputed.

7. On or about October 5, 1982, Plaintiff ceased to perform the duties of his regular job. He subsequently alleged that he became fully disabled from any reasonable occupation.

7. Undisputed.

8. Plaintiff was paid long-term disability benefits from April of 1983 (following 180-day elimination period) through approximately March 31, 2002 by either Aetna (a predecessor carrier) or Hartford.

8. Undisputed.

9. In March of 2002, Hartford wrote to Plaintiff and informed him that because the evidence did not support an ongoing disability, it was terminating his claim. Plaintiff appealed Hartford's decision, however, the appeal was denied.

9. Undisputed.

10. Page 24 of the SPD of the Occidental Petroleum Corporation Long-Term Disability Plan states "The Hartford shall have full and exclusive authority and responsibility for making all claim determinations." It also states "The Hartford shall have full and exclusive authority and responsibility for reviewing denied claims on appeal."

10. Undisputed.

11. Page 17 of the SPD for the Occidental Petroleum Corporation Long-Term Disability Plan states: "Who interprets policy terms and conditions? The Hartford has full and exclusive authority to determine eligibility for benefits and to construe and interpret all terms and provision for the Group Insurance Policy and Prior Plan."

11. Undisputed.

B. *Plaintiff's Disputed Material Facts*

1. Page 4 of the SPD for the Occidental Petroleum Corporation Long-Term Disability Plan states; [sic] "Notwithstanding any provision in your booklet-certificate to the contrary, you will receive the same benefits for Disability under this Policy which you would have been entitled to receive under the PRIOR plan, had the Prior Plan continued in full force and effect. You will obtain no additional benefits, and are subject to no additional limitations, exclusions or offsets other than those under the Prior Plan[.]"

2. The Prior Plan insured by Aetna contained no language granting administrative discretion.

3. Plaintiff began seeing Dr. Theresa Ferrer-Brechner for pain management in 1995.

4. INSURER did not consider the medical records of Dr. Theresa Ferrer-Bre-

chner in denying Plaintiff disability benefits.

5. INSURER stated that it was imperative to show Plaintiff could work an eight hour day to justify termination of benefits.

6. INSURER was aware of Plaintiff's pain management treatment under Dr. Theresa Ferrer–Brechner.

## V. STANDARD OF REVIEW

### A. Summary Judgment–Fed. R. Civ. P. 56

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir.1998). Therefore, to defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id.* A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence must be viewed in a light most favorable to the nonmoving party. *Indiana Lumbermens Mut. Ins. Co. v. West Oregon Wood Products, Inc.*, 268 F.3d 639, 644 (9th Cir.2001), *amended by* 2001 WL 1490998 (9th Cir.2001). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir.2000). However, if the nonmoving party has the burden of proof at trial, the moving party must only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of proof, the non-moving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *Triton Energy Corp.*, 68 F.3d at 1221. The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux*, 263 F.3d at 1076.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

"In order to show that a genuine issue of material fact exists, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Rivera v. National Railroad Passenger Corporation*, 331 F.3d 1074,

1078 (9th Cir.2003) (quoting *Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505). If the moving party can meet his burden of production, the non-moving party "must produce evidence in response.... [H]e cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med., Inc.,* 343 F.3d 1107, 1112 (9th Cir.2003). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera,* 331 F.3d at 1078 (citing *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 922 (9th Cir.2001)).

■ The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See U.S. ex rel. Anderson v. N. Telecom, Inc.,* 52 F.3d 810, 815 (9th Cir.1995). Nevertheless, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505. A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to find genuine factual issues. *See Abdul–Jabbar v. G.M. Corp.,* 85 F.3d 407, 410 (9th Cir.1996).

## VI. *LEGAL ANALYSIS*

A. *Denial of Benefits Under 29 U.S.C. § 1132(a)(1)(B)*

### 1. *Standard of Review*

■ "A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed *de novo* 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the

plan,' in which case an abuse of discretion standard is applied." *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1321 (9th Cir.1995) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)).[2] As the Supreme Court held, "[c]onsistent with established principles of trust law, ... a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone,* 489 U.S. at 115, 109 S.Ct. 948; *see also Grosz–Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1159 (9th Cir. 2001).

In reaching this decision, the Court refused to make the "arbitrary and capricious standard" from the Labor Management Relations Act ("LMRA") the default standard of review where ERISA is concerned, turning instead to principles from trust law for guidance. *Firestone,* 489 U.S. at 110, 109 S.Ct. 948. The Court did say that "[n]either general principles of trust law nor a concern for impartial decision[ ] making, however, forecloses parties from agreeing upon a narrower standard of review." *Id.* at 115, 109 S.Ct. 948. When the benefit plan gives the administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the deferential "arbitrary and capricious" standard is appropriate. *Id.* at 107–15, 109 S.Ct. 948.

### 2. *The Burden of Proof for Establishing the Applicable Standard of Review*

Under *Firestone,* "the default is that the administrator has no discretion, and the

---

**2.** The alternative to the *de novo* standard of review is spoken of variously as an abuse of discretion, an arbitrary and capricious, or a deferential standard. Some Ninth Circuit cases "state that an 'arbitrary and capricious' standard is applied, while others use the term

'abuse of discretion.' The standards differ in name only. In *Firestone,* the Supreme Court focused on whether the administrator had 'discretionary authority.' ..." *Atwood,* 45 F.3d at 1321. The term abuse of discretion will be used in this case.

administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (9th Cir.1999). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone,* 489 U.S. at 115, 109 S.Ct. 948.

### B. *Grosz–Salomon*

In *Grosz–Salomon,* before Defendant executed an amendment of its long-term disability policy to include a provision giving the administrator discretion to make claims determinations, Plaintiff became disabled. *Grosz–Salomon,* 237 F.3d at 1157. After the amended plan had gone into effect, Defendant "accepted" Plaintiff's claim. *Id.* Therefore, Defendant's plan amendment became effective after the Plaintiff's claim was filed but before Defendant accepted the claim. Years later, after videotaping Plaintiff, Defendant concluded that Plaintiff was no longer disabled under the terms of the policy. *Id.* at 1158. After initially accepting Plaintiff's claim, Defendant determined she should no long continue to receive benefits.

The Ninth Circuit held that the revised plan, and its discretionary provision, controlled. Because no circuit had yet addressed the question of "which policy dictates the standard of review when an insured files her claim under a non-discretionary policy but is subsequently denied benefits under an amended regime," the Ninth Circuit looked to the only district court decision that had considered this "precise question" for guidance. *Id.* at 1159 (relying upon *Blessing v. Deere & Co.,* 985 F.Supp. 899 (S.D.Iowa 1997)). *Blessing* found that "an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied." *Id.* at 1159–60 (focusing "on when the plan administrator denied the claim rather than on when the claimant filed it, or when the event triggering coverage occurred").

The Ninth Circuit explained the reasons why courts should use the plan in effect at the time the benefits are denied. *Id.* at 1160–61. Relying upon Fifth and Tenth Circuit opinions, the Ninth Circuit concluded that welfare benefits, unlike pension benefits, "need never vest." *Id.* at 1160 (quoting *Chiles v. Ceridian Corp.,* 95 F.3d 1505, 1510 (10th Cir.1996)). "Simply put, an employee's rights under an ERISA welfare benefit plan do not vest unless and until the employer says they do." *Id.* Therefore, "employers are free to amend or terminate ERISA welfare benefit plans unilaterally unless employees have bargained for contractually vested rights, and whether these rights exist is determined by application of general principles of contract." *Id.* at 1160 n. 24 (citing *Deboard v. Sunshine Mining and Refining Co.,* 208 F.3d 1228, 1239–40 (10th Cir.2000)).[3] The

---

**3.** In an unpublished opinion, a district court summarized the general rule of *Grosz–Salomon,* which the Third and Seventh Circuits followed and relied upon:

In several recent cases, the courts have addressed what version of a plan applies when the plan is amended to add discretionary language after the insured was injured or began to receive benefits. These cases stand for the proposition that, unless a plan expressly indicates that a right to benefits vests at an earlier date, a claim for benefits does not accrue until those benefits are denied. If the benefits have not vested and the procedure for amending the plan is followed, then the addition of, or amendment to, a discretionary language provision in the plan applies to all decisions made as of the effective date of the amendment.

Ninth Circuit concluded that the fact "she [i.e., Plaintiff] became permanently disabled and filed her disability claim while the first policy was in effect [was] irrelevant; it [did] not entitle her to invoke that plan's provisions in perpetuity.... This court must look to the revised plan to determine the appropriate standard of review." *Id.* at 1160–61.

In this case, Plaintiff became disabled in 1982 while performing his duties as an oil-rig foreman. UMF at 7; Plaintiff's Opposition at 1:17–19. At the time of his injury, and at the time his claim was accepted, Plaintiff participated in the Prior Plan, which fell under Title 1 of ERISA. Plaintiff's Opposition at 1:10–12. In contrast, in *Grosz–Salomon*, Defendant accepted Plaintiff's claim after amending the plan. 237 F.3d at 1157. The court there did not find the temporal relationship of Defendant's acceptance of the claim and change of the plan to be the dispositive fact; rather, the court found that governing welfare-benefit law controlled, which held that welfare benefits are prospective and do not automatically vest but, rather, vest when employers say they do. *Id.* at 1160.

The Prior Plan was replaced by the LTD Plan, which was an Employee Welfare Benefit Plan under Title 1 of ERISA and was administered and insured by Defendant. Defendant's Memo at 2:5–11; Plaintiff's Opposition at 1:5–12. While under the LTD Plan, Defendant informed Plaintiff "that because the evidence did not support an ongoing disability, it was terminating his claim." UMF at 9; Plaintiff's Opposition at 1:22–25.

 Under the general rule established in *Grosz–Salomon*, the court must look to the revised plan in effect at the time of the claim decision to determine the

appropriate standard of review. *See* 237 F.3d at 1160–61. In this case, as the revised plan gives the administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the deferential abuse-of-discretion standard is appropriate for review. *Firestone,* 489 U.S. at 107–15, 109 S.Ct. 948.

### C. Exception to the General Rule of Grosz–Salomon: the Vesting of Welfare Benefits Under ERISA

#### 1. Vesting of Welfare Benefits Under ERISA

 Welfare benefits "are not subject to the same minimum vesting requirements under ERISA as pension benefits." *Burrey v. Pacific Gas & Elec. Co.,* 159 F.3d 388, 394 (9th Cir.1998) (citing *West v. Greyhound Corp.,* 813 F.2d 951, 954 (9th Cir.1987)). As the Ninth Circuit said:

> One of the major purposes of ERISA is to ensure that employees receive their vested benefits when the pension plans are terminated. To assure the protection of vested pension benefits, ERISA prescribes vesting and accrual schedules and provides that an employee's right to his normal retirement benefit is "nonforfeitable." *ERISA, however, expressly exempts employee welfare benefit plans from the sections concerned with vesting and accrual.* 29 U.S.C. § 1051(1). While ERISA, in 29 U.S.C. § 1322, also guarantees the payment of "all nonforfeitable benefits," this protection is applicable only to pension, stock bonus or profit-sharing plans. 29 U.S.C. § 1321(a); 26 U.S.C. § 401(a). There is *no language in ERISA which provides for the accrual of welfare benefits or*

*Singleton v. San Jacinto Methodist Hosp.,* No. CIV.A. H–02–1396, 2003 WL 22303420 at *2 (S.D.Tex. July 14, 2003); *see also Hackett v.*

*Xerox,* 315 F.3d 771, 774 (7th Cir.2003); *Smathers v. Multi–Tool, Inc.,* 298 F.3d 191, 195–97 (3d Cir.2002).

*guarantee that such benefits are vested or nonforfeitable.*

*West,* 813 F.2d at 954 (emphasis added and case citations omitted).

In *Grosz–Salomon,* the Ninth Circuit relied upon a Tenth Circuit opinion on vesting and welfare benefits under ERISA, which follows *West:*

> Although ERISA pension plans are subject to mandatory vesting requirements, see 29 U.S.C. § 1053, *ERISA employee welfare benefit plans are not subject to such standards, and employers are generally free to amend or terminate these plans unilaterally* (assuming the plan provides for this right). Nevertheless, an employer and employee may contract for vested post-employment welfare benefits.
>
> In deciding whether an ERISA employee welfare benefit plan provides for vested benefits, we apply general principles of contract construction. In particular, "the Supreme Court has directed us to interpret an ERISA plan like any contract, by examining its language and determining the intent of the parties to the contract." If we determine "the plan language is ambiguous, we may look at extrinsic evidence."

*Deboard v. Sunshine Mining & Ref. Co.,* 208 F.3d 1228, 1240 (10th Cir.2000) (emphasis added and internal citations omitted) (cited by *Grosz–Salomon,* 237 F.3d at 1160 n. 24).

### 2. *Prohibition Against a Retroactive Application of Amended Benefit Plans Against Vested Rights*

An exception to *Grosz–Salomon*'s general rule applies when the beneficiary's rights have already vested. Under the general rule, "an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied." *Grosz–Salomon,* 237 F.3d at 1159 n. 12 (quoting *Menhorn v. Firestone Tire &*

*Rubber Co.,* 738 F.2d 1496, 1501 (9th Cir. 1984)). Welfare benefits under an ERISA plan do not vest "until the employer says they do." *Id.* at 1160. Generally, welfare benefits will not have vested at the time when the plaintiff's cause of action arises: "[r]ights to benefits do not accrue prospectively. [The beneficiary does] not, upon initial determination of eligibility, accrue a right to benefits indefinitely; instead his right to those benefits accrues as the payments become due." *Hackett,* 315 F.3d at 774. The controlling plan is, then, the plan in effect when the beneficiary's claim for benefits accrued. *See Grosz–Salomon,* 237 F.3d at 1159 n. 12 (pensioner's ERISA cause of action arose when he applied for and was denied benefits) (citing in accord *Bolton v. Construction Laborers' Pension Trust for So. Cal.,* 56 F.3d 1055, 1058 (9th Cir.1995) (holding that under ERISA, a widow's cause of action for spousal benefits accrued when she was denied those benefits)).

An exception exists when vesting has occurred prior to the denial of benefits. An amended plan cannot be retroactively applied. A plaintiff is entitled to the application of a previous plan if the application of an amended plan would deprive the plaintiff of benefits previously received or that had previously come due. If the plaintiff's benefits have already vested, an amended plan cannot be applied to those vested benefits to deprive the plaintiff of them.

Plaintiff implies that this exception applies to require the standard of review ought to be taken from the prior, not amended, plan. Under Plaintiff's view, a *de novo* standard applies to review the denial of his benefits. Plaintiff alleges that the following passage from the LTD Plan supports the use of the Prior Plan and the *de novo* standard:

Notwithstanding any provision in your booklet-certificate to the contrary, you will receive the same benefits for Disability under this Policy which you would have been entitled to receive under the Prior Plan, had the Prior Plan continued in full force and effect. You will obtain no additional benefits, and are subject to no additional limitations, exclusions or offsets other than those provided under the Prior Plan.

Prior Plan means the the [sic] Occidental Petroleum Corporation Long–Term Disability plan provided by Occidental Petroleum Corporation on September 30, 1995.

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, or provision of the policy, other than as herein stated.

Bernacchi's Declaration, Exh. 1 at 4; *see also* Plaintiff's Opposition at 3:1–28. Plaintiff alleges:

By the very language used, any provision used to grant discretion or authority to the PLAN administrator is null and void without proof that the same identical discretion or authority had been granted to the administrator of the PRIOR PLAN at the time that Plaintiff because disabled. INSURER has provided no proof that the PRIOR PLAN granted any discretion or authority to the administrator. In fact, not [sic] such language exists in the PRIOR PLAN .... Without such proof, the INSURER has failed to meet the required burden.

Plaintiff's Opposition at 3:13–19. According to Plaintiff's allegation, because the previous plan contained no grant of discretion to the administrator, and because Plaintiff was entitled to the same benefits under the LTD Plan to which he was entitled under the Prior Plan, Plaintiff is not subject to the "exclusive authority" of the LTD Plan and, hence, the termination

of his benefits must be judged under a *de novo* standard of review.

Plaintiff implicitly raises two issues: (1) is this passage from the prior plan binding after the amended plan takes effect; and (2) if so, does this passage operate to vest Plaintiff's rights, such as to create an exception to the general rule established in *Grosz–Salomon?*

Plaintiff does not discuss *Grosz–Salomon,* and does not cite any case in which *Grosz–Salomon* was applied. No case has been presented to this court in which a provision analogous to that in the Prior Plan in this case was interpreted. The Seventh Circuit in *Hackett* cited and followed *Grosz–Salomon* in addressing a beneficiary's claim that "the original plan contains language that overrides the presumption against vesting ... [and] that his right to benefits did in fact vest prior to the [amended] plan. 315 F.3d at 774. If beneficiary's rights had vested, then the discontinuation of benefits would be judged under the original disability plan, which did not grant to the disability administrator "the sole discretion in determining whether an employee meets the conditions for receiving benefits." " *Id.* at 773. Under *Firestone,* if a beneficiary's rights had vested, the discontinuation of his benefits would be judged under a *de novo* standard of review. *See* 738 F.2d 1496.

The provision in question in *Hackett* said that the plan "cannot be amended in a way that would 'diminish any rights accrued for the benefit of the participants prior to the effective date of the amendment." ' *Id.* In this case, a provision from the Plaintiff's Prior Plan speaks in similar language providing similar protection against the diminution of rights present in the Prior Plan:

Notwithstanding any provision in your booklet-certificate to the contrary, *you will receive the same benefits for Dis-*

*ability under this Policy which you would have been entitled to receive under the Prior Plan, had the Prior Plan continued in full force and effect.* You will obtain no additional benefits, and are subject to no additional limitations, exclusions or offsets other than those provided under the Prior Plan.

Bernacchi's Declaration, Exh. 1 at 4 (emphasis added).

The Seventh Circuit rejected the beneficiary's argument that his rights were vested through this provision. The Seventh Circuit argued:

Rights to benefits do not accrue prospectively. Hackett did not, upon initial determination of eligibility, accrue a right to benefits indefinitely; instead his right to those benefits accrues as the payments become due. As a result the provision referenced by Hackett in this context *only says that no amendment shall require Hackett to return benefits he has already received or alter benefits for which the payments have become due.* For example if Xerox failed to send Hackett his benefit check in September, they could not pass an amendment in November reducing his benefits for September—his benefits for September had already accrued; on the other hand Xerox is free to amend the policy in November to change Hackett's benefits for the following January.

*Hackett,* 315 F.3d at 774. The provision in question "only says that no amendment shall require Hackett to return benefits he has already received or alter benefits for which the payments have become due." The provision does not indefinitely vest beneficiary's rights; rights to benefits do not accrue prospectively.

*Hackett* is not binding authority upon this court. It is, however, persuasive authority. *Grosz–Salomon* does not address a saving provision similar to that in the Prior Plan in this case, nor does any

Ninth–Circuit case. *Hackett* does address such a provision. It does so relying upon *Grosz–Salomon* and the line of reasoning the Ninth Circuit relied upon in that case. Because the Seventh Circuit has used and adopted Ninth Circuit precedent, the finding is supported that if this issue were presented to the Ninth Circuit, its holding would be the same as *Hackett.*

The provision from the Prior Plan which Plaintiff argues creates a vested right to perpetual disability does not. The LTD Plan applies under *Grosz–Salomon.* The termination of Plaintiff's benefits is judged under an abuse of discretion standard.

### D. *Conflict of Interest*

 "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (quoting Restatement (Second) of Trusts § 187, Comment d (1959); *see also* 489 U.S. at 103, 109 S.Ct. 948 ("If a plan gives discretion to such an official, however, the conflict must be weighed as a factor in determining whether there is an abuse of discretion."). The Ninth Circuit has "interpreted this language to mean that [courts] apply 'heightened scrutiny' where the plan administrator has a conflict of interest by virtue of its economic stake in the benefit decisions which it makes. *Atwood,* 45 F.3d at 1322 (citing *Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517, 1525 (9th Cir.1993)). The Ninth Circuit "ultimately appl[ies] a traditional abuse of discretion standard to the decisions of apparently conflicted employer—or insurer—fiduciaries unless the affected beneficiary comes forward with further evidence indicating that the conflicting interest

caused a breach of the administrator's fiduciary duty to the beneficiary." *Id.* at 1323. The affected beneficiary must "provide[ ] material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Id.* "[T]he simple fact that employees of [the insurer] made the decision to deny benefits is not enough to establish a breach of fiduciary duty." *Id.* If the affected beneficiary cannot provide this "material, probative evidence, courts should "apply [the] traditional abuse of discretion review."" *Id.* Where such evidence is shown, "the plan bears the burden of producing evidence to show that the conflict of interest did not affect the decision to deny benefits. If the plan cannot carry that burden, [courts] will review the decision *de novo*, without deference to the administrator's tainted exercise of discretion." *Id.*

In this case, Plaintiff argues that a *de novo* standard should be applied because a conflict of interest exists. While discussing a number of alleged conflicts, Plaintiff does not, however, explicitly discuss how they provide "material, probative evidence" of a conflict or the two-step test provided in *Atwood* to establish a conflict and apply the "less deferential" standard. *Id.; see also* Plaintiff's Opposition at 4:1–5:20. Although Plaintiff does not explicitly state the grounds upon which a conflict of interest exists, it appears the grounds are threefold: (1) "[a]t no time did the administrator consider" the "operative reports of Theresa Ferrrer–Berchner, M.D. . . . the pain management physician treating Plaintiff at the time that INSURER discontinued Plaintiff's benefits;" (2) Defendant determined that Plaintiff could return to work on the basis of an eight-hour work day; (3) although Defendant knew of Dr. Brechner's care, Dr. Phillips conducted the

review. Plaintiff's Opposition at 4:8–10; 4:13–27; 5:3–8.

### 1. *Plaintiff's Physician's Report and Treating Physician Rule*

 "Nothing in [ERISA] suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Defendant was not required to afford any particular deference to Plaintiff's physician. Defendant's failure to do so is not "material, probative evidence" that a conflict of interest exists.

Plaintiff, however, argues that Defendant failed to "consider" Dr. Brechner's treatment at all. Plaintiff's Opposition at 4:15–16. Defendant does not dispute this allegation but argues in response that its physicians did "refer to various injections that Plaintiff underwent[,] . . . considered [Geiger's] statements . . . regarding his epidural injunctions and the worsening of his pain[,] . . . [and] w[ere] aware of the treatment given by Dr. Brechner," which Defendant alleges "were definitely not ignored." Defendant's Reply at 7:3–11.

As the Supreme Court's ruling in *Nord* indicates, Defendant is not required to provide any special deference to Plaintiff's treating physician. In the alternative, Plaintiff's evidence that Defendant failed to "consider" these reports is that they were not included in its physicians' report, which does not necessarily follow. In addition, Plaintiff had multiple physicians, and does not allege that Defendant failed to consider all of them. At least one of these procedures occurred after Plaintiff's benefits were terminated on March 31, 2002 (i.e., May 22, 2002). Plaintiff does not establish that these treatments are

dispositive of his capacity to work. Some of these reports do speak to Plaintiff's capacities and indicate that he enjoyed "excellent relief" from the procedure and "was able to improve his activities," which is support for Defendant's decision to discontinue benefits. *See, e.g.,* September 14, 2001; January 23, 2002. Even if Defendant were under an obligation to afford some deference to these reports, they do not necessarily support the continuation of Plaintiff's benefits. As a result, their omission would not necessarily constitute a conflict of interest.

### 2. *Eight–Hour Work Day*

Plaintiff does not explain why the use of this standard of measure indicates a conflict of interest. Plaintiff does not provide an alternative accepted industry standard of measure. Plaintiff does not indicate whether this standard was or was not employed from April 3, 1983 until March 31, 2002, during which time Plaintiff was paid long-term disability benefits.

Plaintiff has not met his burden of providing "further evidence indicating that the conflicting interest caused a breach of the administrator's fiduciary duty to the beneficiary." *Atwood,* 45 F.3d at 1323. The proper standard of review is abuse of discretion and not *de novo.*

### VII. *CONCLUSION*

Defendant, the moving party, met its burden of demonstrating the absence of a genuine issue of fact as to the proper standard of review. *See Devereaux,* 263 F.3d at 1076. Plaintiff, the nonmoving party, has not introduced "significant probative evidence tending to support [his] complaint." *See Rivera,* 331 F.3d at 1078. The Ninth Circuit's decision in *Grosz–Salomon* is binding upon this court. Under its general rule, the denial of ERISA benefits is judged under the standard of the plan in effect at the time the benefits are denied. This ruling follows the generally accepted law that welfare benefits do not vest prospectively, but only when payments become due. The provision in question from the Prior Plan only protects Plaintiff from having to return benefits he has already received or from the alteration of benefits for which the payments had become due. In addition, Plaintiff did not establish a conflict of interest. As a result, the proper standard of review for the denial of Plaintiff's benefits is abuse of discretion. For the following reasons:

Defendant's motion for partial summary judgment that the appropriate ERISA standard under which to review the termination of the benefits of Plaintiff is abuse of discretion is GRANTED;

Defendant shall submit a form of order within five (5) days of service of this decision.

SO ORDERED.