**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRYAN GRIGGS; VALERIE GRIGGS, husband and wife, | No. 13-35282 |
| Plaintiffs - Appellants, | D.C. No. 3:12 cv-00463 MO |
| v. | MEMORANDUM* |
| ALLSTATE INSURANCE COMPANY, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief District Judge, Presiding

Argued and Submitted May 6, 2016
Portland, Oregon

Before:    TASHIMA, TALLMAN, and HURWITZ, Circuit Judges.

Plaintiffs Bryan and Valerie Griggs appeal the district court's order granting

summary judgment to Defendant Allstate Insurance Company ("Allstate").  We

have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

        *    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

# I.

From June 2010 to June 2011, Plaintiffs maintained a Renters Insurance Policy ("Policy") with Allstate. While the Policy provided protection against unauthorized use of a credit card, it also contained an exclusion for any "loss arising from any business of an insured person."

Between June 2009 and November 2010, Bryan Griggs was employed as the Chief Financial Officer of HDMC Group LLC ("HDMC"). HDMC and Advanced Travel Systems, Inc. ("ATS") purchase hotel rooms in bulk and then resell them, typically to attendees of conventions and tradeshows. To reserve the hotel rooms, HDMC and ATS place a credit card on file with the vendor. HDMC and ATS maintain various company credit cards for this purpose, but the daily credit limit on these cards is not always sufficient to cover all of the charges they wish to incur. Thus, Griggs agreed to allow HDMC to use his personal American Express card to reserve some hotel rooms. Griggs authorized each transaction on a case-by-case basis, and HDMC agreed to reimburse Griggs for any charges.

In September 2010, Griggs noticed that his credit card statement contained transactions that he did not recall authorizing HDMC to make. Griggs disputed the charges and informed HDMC that it could no longer use his card. A few months

later, HDMC terminated Griggs's employment. Griggs alleges that HDMC continued to make unauthorized charges on his credit card after he was fired.

In January 2011, ATS and HDMC sued Plaintiffs in Nevada state court, alleging that Griggs wrongfully disputed charges that he had authorized and for which he had been reimbursed. Plaintiffs twice tendered the defense of the state court action to Allstate. Allstate denied coverage and declined to provide a defense.

In response, Plaintiffs filed this federal action, seeking damages and a declaration that Allstate owed Plaintiffs a duty to defend the state court action. The district court granted Allstate's motion for summary judgment, concluding that the business exclusion clause applied. Plaintiffs appeal.

## II.

We review de novo a grant of summary judgment on an insurer's duty to defend. *Ind. Lumbermens Mut. Ins. Co. v. W. Or. Wood Prods., Inc.*, 268 F.3d 639, 643 (9th Cir. 2001). "Viewing the evidence in the light most favorable to the nonmoving party, we must decide whether there are any genuine issues of material fact and whether the district court correctly applied the pertinent substantive law." *Id.* a 644 (citation omitted).

## III.

3

"Under Oregon law, a court assesses an insurer's duty to defend an action against its insured by reviewing the complaint and the insurance policy." *Id.* (citing *Ledford v. Gutoski*, 877 P.2d 80, 82 (Or. 1994) (en banc)). "In evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy." *Ledford*, 877 P. 2d at 82. "The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage." *Id.* at 83.

The district court correctly concluded that Allstate did not have a duty to defend under Oregon law. The Policy expressly excludes coverage for credit card losses "arising from any business of an insured person." In the context of insurance policies, Oregon courts have broadly construed the phrase "arising out of" to indicate "a causal connection, rather than a proximate causal connection." *Ristine v. Hartford Ins. Co. of Midwest*, 97 P.3d 1206, 1208 (Or. Ct. App. 2004) (citation omitted); *see also Oakridge Cmty. Ambulance Serv., Inc. v. U.S. Fid. & Guar. Co.*, 563 P.2d 164, 166–67 (Or. 1977) (en banc). The Policy defines "business" as "any full or part-time activity of any kind engaged in for economic gain." Although the Policy does not further define "economic gain," Plaintiffs

concede that a principal form of economic gain recognized in the case law is salary or compensation earned through employment.

the state court complaint alleges that Plaintiffs' claimed credit card losses arose from Griggs' employment at HDMC. Those allegations fall squarely within the Policy's business exclusion clause. That complaint also alleges that Griggs was employed full-time as the CFO of HDMC. The complaint explains that HDMC and ATS are hotel room wholesalers that, "[a]s part of their normal course of doing business," place a credit card on file with the vendor to reserve hotel rooms. Further, it also alleges that, at Griggs' suggestion, HDMC and ATS used Griggs's "personal American Express card to make payment due from HDMC or ATS to various hotel and travel wholesalers, as those vendors required immediate payment by credit card for rooms being purchased by HDMC."

Plaintiffs were sued, in the Nevada state court action, in connection with acts Griggs took in furtherance of a for-profit venture. Any losses Griggs sustained from HDMC's unauthorized use of Griggs's credit card arose from – that is, were causally connected to – his full-time, paid employment at HDMC.

Because the Policy's business exclusion provision precludes coverage, the district court did not err in granting summary judgment in favor of Allstate.

**AFFIRMED.**