[No. D009727. Fourth Dist., Div. One. Aug. 29, 1989.]

AMERICAN COMPUTER CORPORATION et al., Petitioners, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; ZORAN D. J. MILETIC, Real Party in Interest.

COUNSEL

Hughes, Hubbard & Reed, William T. Bisset and Charles Avrith for Petitioners.

No appearance for Respondent.

Toothacre & Pederson and Rod M. Toothacre for Real Party in Interest.

OPINION

BENKE, J.—

## INTRODUCTION

In *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 669-671 [254 Cal.Rptr. 211, 765 P.2d 373], the Supreme Court held that when an employee's duty to disclose information to his employer serves only the private interest of the employer the substantial public policy needed to support a claim for wrongful termination does not exist. In this case, petitioners, a computer company, its corporate parent and its officers, fired real party in interest Zoran D. J. Miletic. Miletic then sued them for wrongful termination and alleged he was fired in part because he questioned the officers about what he believed was embezzlement from the company. Because we find Miletic's communication with the officers did not serve any interest other than the company's, under *Foley* his reports will not support a wrongful

termination claim. Accordingly we grant petitioners' petition and direct the trial court to enter an order dismissing Miletic's claim.

## FACTUAL SUMMARY

According to Miletic's complaint, he began working in November 1985 as the director of marketing and sales at defendant American Computer Corporation, a subsidiary of Cognitronics Corporation (collectively ACC). ACC produces and sells computer software for use in the medical profession.

Miletic alleges that in January 1986, he discovered funds allocated to the marketing and sales budget were being paid in consulting fees to the former director of marketing and sales and others. From January to March 1986, Miletic alleges he questioned the chief operating officer of the company, defendant Albert J. Grenier, and the vice-president of finance, Susan Rose Salisbury, about the propriety of these payments. He alleges on March 30, 1986, he told Grenier and the chairman of the company, defendant David S. Sheppard, he believed the consultants were being paid without providing any services to the company. He alleges he was told he should not concern himself with the consulting fees.

On April 21, 1986, he was terminated as an employee of ACC.

## PROCEEDINGS BELOW

On April 4, 1987, Miletic filed a complaint which alleged six causes of action against ACC, Grenier, Salisbury, and Sheppard. The defendants demurred to the complaint and on June 9, 1987, their demurrer was sustained with leave to amend as to five of the causes of action. The demurrer was overruled as to the fifth cause of action in which Miletic alleges his termination violated public policy.

Miletic did not timely amend his complaint and the parties agree the fifth cause of action is his only remaining claim.[1]

On December 29, 1988, the Supreme Court filed its opinion in *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, and on January 17, 1989, the defendants, relying on *Foley,* filed a motion for judgment on the pleadings or in the alternative for summary judgment. Their motion was denied on February 17, 1989. They filed a timely petition for writ of mandate.

---

[1] Miletic's current counsel did not represent Miletic at the time the amended complaint was due.

## DISCUSSION

█ In *Foley,* the Supreme Court held that an employer's right to discharge an employee is "subject to limits imposed by public policy, since otherwise the threat of discharge could be used to coerce employees to committing crimes, concealing wrongdoing, or taking other action harmful to the public weal." (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 665, fn. omitted.) The court further held a termination which violated public policy gives rise to tort liability rather than damages for breach of contract. (*Id.* at pp. 667-668.) Quoting from its opinion in *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314], the Supreme Court stated: " '[A]n employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend upon any express or implied ' "promise[s] set forth in the [employment] contract" ' [citation] but rather reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes. As such, a wrongful discharge suit exhibits the classic elements of a tort cause of action.' " Given its foundation outside the parties' contract, the court held "disparagement of a basic *public* policy must be alleged." (*Id.* at p. 669.)

The plaintiff in *Foley* alleged he was discharged because he reported to an officer of his employer that his immediate supervisor was being investigated by the Federal Bureau of Investigation for embezzlement from the supervisor's former employer. (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 668.) In holding this conduct did not implicate a basic public policy, the court stated: "Whether or not there is a statutory duty requiring an employee to report information relevant to his employer's interest, we do not find a substantial public policy prohibiting an employer from discharging the employee for performing that duty. Past decisions recognizing a tort action for discharge in violation of public policy seek to protect the public, by protecting the employee who refuses to commit a crime [citations], who reports criminal activity to proper authorities [citations], or who discloses other illegal, unethical, or unsafe practices [citation]. . . . No equivalent public interest bars the discharge of the present plaintiff. *When the duty of an employee to disclose information to his employer serves only the private interest of the employer, the rationale underlying the Tameny cause of action is not implicated.*"[2] (*Id.* at pp. 670-671, italics added, fns. omitted.)

[2] As he did in the trial court Miletic argues this portion of the *Foley* opinion should not be applied to his case. Although there was some question as to whether the additional holding in *Foley*—that in an employment context claims for breach of covenant of good faith and fair dealing do not give rise to liability in tort—would be given retroactive effect, there is no longer any question about either portion of the *Foley* opinion. "[W]e hold that *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, shall be given full retroactive effect as to all cases not

■ In this case we are unable to discern any interest other than ACC's which was served by the questions Miletic posed to Grenier, Salisbury and Sheppard. He has not alleged he was ordered to embezzle from the corporation. Quite to the contrary, he alleges he was told the disputed payments were none of his concern. Nor was he punished for reporting criminal activity to law enforcement agencies.[3] Rather, his reports were to his superiors.

The most that can connect Miletic's conduct with the public interest is the argument that by reporting his suspicions to his superiors he took action which might eventually prevent or uncover commission of a felony and thereby served the laudable goal of preventing crime. However, the potential for such a public benefit is not a public interest which is weighty enough to give rise to a claim for wrongful discharge. Our conclusion in this regard is based on the fact Justice Mosk, in his dissent in *Foley,* unsuccessfully advanced much the same argument. "My colleagues insist that reporting the presence of an embezzler to an employer is solely to the benefit of the employer. While undoubtedly it is to the employer's benefit, it is not exclusively so. It is my opinion that such action—i.e., advising the state-created corporation of the employee in a supervisorial position of a person chargeable with a potential felony—is in the best interests of society as a whole, and therefore covered by the public policy rule.

"Under Labor Code section 1102.5, subdivision (b), an employer is prohibited from retaliating against an employee for disclosing information to a law enforcement agency when there is reasonable cause to believe a violation of state or federal law has been committed. It seems incongruous to permit retaliation and discharge when the employee chooses to go directly to his employer with the information, rather than to circumvent the employer, go behind his back and directly to a public agency. In either event, it seems clear to me that the law and public policy are implicated." (Dis. opn. of Mosk, J., 47 Cal.3d at p. 724.)

Although the majority in *Foley* might have responded to Justice Mosk's dissent by pointing out that the public interest in that case was diminished because the plaintiff there was only reporting past activities of a colleague rather than, as is alleged here, ongoing criminal conduct, no such

yet final on January 30, 1989, the date that decision became final." (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 993 [258 Cal.Rptr. 592, 772 P.2d 1059].)

[3] As the court in *Foley* noted, Labor Code section 1102.5, subdivision (b), "prohibits an employer from retaliating 'against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or violation of noncompliance with a state or federal regulation.' " (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 670, fn. 10.)

distinction appears in the majority opinion. We interpret this to mean the majority considered the entire merits of Justice Mosk's arguments and rejected them.

In sum, as in *Foley,* Miletic has not alleged his discharge violated any basic *public* policy. Thus, the trial court erred in denying the defendants' motion for judgment on the pleadings. Although generally leave to amend should be granted if there is a reasonable opportunity to state a claim (*Leakes* v. *Shamoun* (1986) 187 Cal.App.3d 772, 778 [232 Cal.Rptr. 171]), we do not believe on this record it is reasonable to expect Miletic will be able to bring statements he made to his employer within the public policy requirements of *Foley*.

Petition granted.

Kremer, P. J., and Froehlich, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied November 16, 1989. Mosk, J., and Panelli, J., were of the opinion that the petition should be granted.