331 F.3d 1074
 John RIVERA, Plaintiff-Appellant,
v.
NATIONAL RAILROAD PASSENGER CORPORATION; Richard Carney; Larry Mahon; Angel Acevedo; Carlos Hernandez; John Fallowfield; Doug Demming; Tom Mahr, Defendants-Appellees.
 No. 01-16232.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 9, 2002.
 Filed June 10, 2003.
 
 COPYRIGHT MATERIAL OMITTED John C. Elstead, Elstead Law Firm, Pleasanton, CA, Stuart B. Esner (briefed) and Andrew N. Chang (argued), Esner & Chang, Los Angeles, CA, for the plaintiff-appellant.
 Kathy M. Banke (argued), Ben Shatz (briefed), Crosby, Heafey, Roach & May, Oakland, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; Susan Yvonne Illston, District Judge, Presiding. D.C. No. CV-99-04003-SI.
 Before BALDOCK,* KLEINFELD and RAWLINSON, Circuit Judges.
 RAWLINSON, Circuit Judge.
 
 
 1
 Plaintiff John Rivera ("Rivera") appeals from two orders of the district court, one granting in part defendants' motion to dismiss and the other granting in full defendants' motion for summary judgment. Rivera maintains that: (1) the district court erred in granting summary judgment in favor of his employer on his wrongful termination claim; (2) he is entitled to bring a state law claim for defamation against the individual defendants and Amtrak can be held vicariously liable for the statements made by those defendants; and (3) the district court abused its discretion by denying him leave to amend his complaint in order to assert a claim for defamation against Amtrak under the Federal Employers Liability Act ("FELA").
 
 
 BACKGROUND
 
 I. Factual History
 
 2
 This case was adjudicated by summary judgment, so all the "facts" reported herein are mere allegations, and none of the allegations have been proved. Rivera began working for the National Railroad Passenger Corp. ("Amtrak") on August 14, 1995 as a night watchman. Shortly thereafter, Rivera asserts, he discovered that his supervisor, Richard Carney ("Carney"), and other Amtrak employees were using and selling drugs on the job. According to Rivera, Randy Flores, Rivera's foreman, also used drugs and compelled Rivera to use drugs by telling Rivera that otherwise Flores would not be able to trust him.
 
 
 3
 Rivera also claims to have overheard a telephone conversation in which Carney discussed plans to steal and resell Amtrak parts. When Carney realized that Rivera had overheard the conversation, Carney offered Rivera $5,000 not to say anything about it to anyone else. Rivera later told Carney that he would not take the money and did not want to be involved in the illegal activity. Larry Mahon ("Mahon"), a division engineer at Amtrak, also purportedly approached Rivera with an offer of money in exchange for his silence. When Rivera refused the money, Mahon told Rivera to keep silent or he would be fired.
 
 
 4
 On March 26, 1998, Carney told Rivera he was being taken out of service for excessive absenteeism and falsification of a time card. Rivera's personal calendar reflects that Rivera worked only 28 days during the three-month period before being taken out of service. In fact, Rivera admitted that his excessive absences were in violation of Amtrak's attendance policy.
 
 
 5
 Shortly after Rivera was taken out of service, Angel Acevedo ("Acevedo"), a watchman for Amtrak, saw Rivera and reported that Rivera made the following threat: "Don't be surprised if I go to the San Jose [Amtrak] office and blow people away." Acevedo reported the incident to Carney, who then reported it to John Fallowfield, who contacted the Amtrak police. Acevedo submitted a written report of the encounter to the Amtrak police. Rivera denied making any such threat.
 
 
 6
 As a result of the alleged threat, Amtrak police contacted the local police and went to Rivera's home to investigate. When they arrived they discovered drugs, drug paraphernalia and an assault rifle with ammunition. Rivera was arrested for drug possession and possession of an unregistered gun. Rivera spent five days in jail. The charges were later dismissed "in the interest of justice."
 
 
 7
 In late March, Amtrak sent Rivera a notice charging him with three violations: (1) falsification of a time card; (2) violation of the attendance policy; and (3) threatening co-workers with bodily harm. The notice directed Rivera to appear at a formal hearing on April 6, 1998. At the hearing, Mahon was the designated charging officer, and Carney and Acevedo appeared as witnesses for Amtrak. Dan Novella, from Rivera's union, the Brotherhood of Maintenance of Way Employees, appeared on Rivera's behalf. Rivera did not appear at the hearing because on March 30, 1998, the Alameda County Court had issued a restraining order against Rivera, ordering him to stay away from Amtrak and Amtrak employees. The restraining order did not expire until July 30, 1998. At the hearing, no one was able to testify definitively whether or not the restraining order prohibited Rivera from attending the hearing.
 
 
 8
 The hearing officer issued a decision finding Rivera guilty of the charges, which were largely substantiated on the basis of Carney's testimony. As a result of the hearing decision, Amtrak General Manager Don Saunders terminated Rivera's employment.
 
 II. Procedural History
 
 9
 Rivera filed a complaint in Alameda County Superior Court alleging the following seven causes of action: (1) wrongful termination in violation of public policy; (2) defamation; (3) false arrest and imprisonment; (4) abuse of process; (5) malicious prosecution; (6) breach of contract; and (7) intentional infliction of emotional distress. Defendants subsequently removed the action to federal court, and filed a motion to dismiss. The district court dismissed Rivera's abuse of process, breach of contract and intentional infliction of emotional distress causes of action without leave to amend. The court also dismissed Rivera's wrongful termination action against the individual defendants, and his defamation action against Amtrak and Tom Mahr without leave to amend. The district court allowed Rivera to replead his wrongful termination claim against Amtrak; his defamation claim against the remaining individual defendants; his false arrest and imprisonment claim; and his malicious prosecution claim.
 
 
 10
 Rivera filed an amended complaint, and defendants moved for summary judgment. The district court granted defendants' summary judgment motion in full and denied Rivera's motion to amend his complaint to replead a claim for defamation against Amtrak under FELA. Rivera appeals the district court's dismissal of his wrongful termination and defamation claims. He also appeals the district court's denial of his leave to amend to assert a defamation claim against Amtrak under FELA.[1]
 
 
 STANDARD OF REVIEW
 
 
 11
 The standard of review on an appeal from a grant of summary judgment is de novo. See Botosan v. Paul McNally Realty, 216 F.3d 827, 830 (9th Cir.2000). The granting of a motion to dismiss is also reviewed de novo. See id.
 
 
 12
 The court must determine, "viewing the evidence in the light most favorable to the nonmoving party, [whether] there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc) (citation omitted). In response to a properly supported motion for summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Henderson v. City of Simi Valley, 305 F.3d 1052, 1055-56 (9th Cir.2002) (quoting Fed.R.Civ.P. 56(e)). In order to show that a genuine issue of material fact exists, the nonmoving party must introduce some "significant probative evidence tending to support the complaint." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Conclusory allegations unsupported by factual data cannot defeat summary judgment. See Arpin v. Santa Clara Valley Trans. Agency, 261 F.3d 912, 922 (9th Cir.2001).
 
 
 DISCUSSION
 
 I. Wrongful Termination
 
 13
 To raise a material question of fact on his wrongful termination claim, Rivera must present evidence that Amtrak dismissed him in violation of a public policy that is (1) embodied in a statute or constitutional provision, (2) beneficial to the public, (3) articulated at the time of discharge, and (4) fundamental. See Stevenson v. Superior Court, 16 Cal.4th 880, 66 Cal. Rptr.2d 888, 941 P.2d 1157, 1161 (1997).[2] Public policy may be implicated when an employer fires an employee for refusing to commit a crime, reporting criminal activity to the proper authorities, or disclosing illegal, unsafe or unethical practices of the employer. See General Dynamics Corp. v. Superior Court, 7 Cal.4th 1164, 32 Cal. Rptr.2d 1, 876 P.2d 487, 497 (1994). Rivera contends that his termination as a result of refusing to engage in illegal activity and for disclosing illegal and unsafe practices on the job falls within the public policy rubric.
 
 
 14
 Amtrak counters that summary judgment was properly granted on Rivera's wrongful termination claim because (1) Rivera never reported the illegal activity he allegedly was privy to; (2) the Amtrak supervisors who fired Rivera did so without knowledge of the alleged illegal activity, and relied upon evidence warranting termination without regard to the illegal activity; and (3) no fundamental public policy was implicated.
 
 
 15
 A. Rivera's Reporting of the Illegal Activity
 
 
 16
 In order to implicate a violation of public policy, Rivera must produce evidence that he disclosed the illegal practices of its employees to Amtrak's management. See Gould v. Maryland Sound Indus., Inc., 31 Cal.App.4th 1137, 37 Cal.Rptr.2d 718, 725-26 (1995).
 
 
 17
 Rivera "reported" the activity to Carney, the same supervisor he alleges was condoning and enforcing the illegal activity at Amtrak. There is no evidence in the record that any of Rivera's other supervisors knew of the asserted illegal drug use and theft of parts. In fact, Rivera specifically testified in his deposition that he never complained to anyone at Amtrak about any activity or conduct he felt was illegal. In support of his claim, Rivera relies only on his own conclusory statements, made in the complaint and in his declaration, that he was forced to use drugs. He does not offer any independent evidence to create a genuine issue of fact as to whether he reported illegal activity to Amtrak management. Rivera's wrongful termination claim fails on this basis alone.
 
 
 18
 The district court's ruling is compelled by the undisputed fact that the individuals who made the decision to terminate Rivera had no knowledge of the illegal activities at Amtrak. See Morgan v. Regents of the Univ. of Cal., 88 Cal.App.4th 52, 105 Cal.Rptr.2d 652, 666 (2000) (finding in a retaliatory discharge claim that the employer's knowledge of the employee's conduct is essential to establishing causation). Rivera contends that Carney's role as the main witness against him at the termination hearing is proof of a scheme to fire him in retaliation for his refusal to participate in illegal activity. However, Rivera admitted that he did violate Amtrak's attendance policy, subjecting him to termination on the bases asserted at the termination hearing. Further, there is no evidence that Acevedo's report of Rivera's threat to Amtrak employees was in any way connected to the alleged drug use or theft. That charge did not arise until after Carney had already taken Rivera out of service for excessive absenteeism. In fact, Rivera conceded his belief that Acevedo was motivated by personal animus unrelated to Rivera's refusal to participate in or keep silent about the illegal activity at Amtrak. Again, Rivera's only support for his claims about Amtrak's motivations are his own conclusory allegations, which are insufficient to defeat a motion for summary judgment. See Arpin, 261 F.3d at 922.
 
 B. Violation of Public Policy
 
 19
 When an employee's disclosure of information to his employer serves only the employer's private interest, the employee has not stated a claim for wrongful termination. See Gould, 37 Cal.Rptr.2d at 725. Accordingly, reporting ongoing criminal conduct to an employer's management does not necessarily implicate a public interest. See American Computer Corp. v. Superior Court, 213 Cal.App.3d 664, 261 Cal.Rptr. 796, 799 (1989).
 
 
 20
 In American Computer, the California Court of Appeal held that the connection between the plaintiff employee's reporting of ongoing criminal activity within his employer's organization and the public interest was too tenuous to establish the violation of a public policy for his wrongful termination claim. See American Computer, 261 Cal.Rptr. at 799. The court reasoned that "the most that can connect [plaintiff's] conduct with the public interest is the argument that by reporting his suspicions to his superiors he took action which might eventually prevent or uncover commission of a felony and thereby serve[] the laudable goal of preventing crime." Id.
 
 
 21
 Rivera's situation is similar to that of the employee in American Computer. If Rivera had reported the illegal activities of his co-workers, Rivera may have achieved the "laudable goal" of preventing crime, but this is not enough to fit within the narrow confines of wrongful termination in violation of public policy. Compare Green v. Ralee Eng. Co., 19 Cal.4th 66, 78 Cal.Rptr.2d 16, 960 P.2d 1046, 1058 (1998) (holding that an employee who reported the sale of defective aircraft parts did state a claim for wrongful discharge in violation of public policy because his action was directly connected to federal regulation of air safety).
 
 II. Defamation
 A. Amtrak
 
 22
 The district court dismissed Rivera's state law claim of defamation against Amtrak because it found that the only statements that could be attributed to Amtrak were those made in the context of its official investigation of Rivera for threatening co-workers. The court held that Amtrak is protected by an absolute privilege for statements made during official disciplinary and law enforcement proceedings. Later, in its order granting defendants' summary judgment motion, the district court denied Rivera's motion for leave to amend his complaint to assert a defamation claim against Amtrak under FELA based on Amtrak's vicarious liability for statements made by the individual defendants. At that time, the district court noted that Rivera's claim against Amtrak would be futile because the statements made by the individual defendants were not made within the scope of their employment so as to implicate liability under the doctrine of respondeat superior.
 
 
 23
 However, under California law Amtrak may be held liable for defamatory statements made by its employees under the doctrine of respondeat superior. Respondeat superior liability is triggered if the defamation occurred within the scope of the employee's employment. See Farmers Ins. Group v. County of Santa Clara, 11 Cal.4th 992, 47 Cal.Rptr.2d 478, 906 P.2d 440, 448 (1995). As long as the statement was made within the scope of employment, the principal need not know about it and the statement need not have been made for the benefit of the principal. See id. at 448-49. "[T]he inquiry should be whether the [action taken] was one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer." Id. at 448 (citation and internal quotation marks omitted) (emphasis in the original); see also Mary M. v. City of Los Angeles, 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341, 1344 (1991) (finding that an action is within the scope of employment "when in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.") (citations and internal quotation marks omitted).
 
 
 24
 The statements alleged by Rivera to be defamatory include statements made by the individual defendants regarding Rivera's alleged falsification of time cards and his alleged threats against Amtrak employees. As a result of these statements, the police came to Rivera's home, and Rivera was arrested and faced criminal charges that were ultimately dismissed. These statements were allegedly made by the individual defendants while on the job and concerned matters of interest to Amtrak and its employees. The statements are therefore appropriately characterized as being made within the scope of the individual defendants' employment for purposes of respondeat superior. See McLachlan v. Bell, 261 F.3d 908, 912 (9th Cir.2001) (holding that employees' defamatory statements made at work about matters relating to work were within the scope of their employment for purposes of respondeat superior and recognizing that California's respondeat superior doctrine imposes a broad rule of liability on employers). Consequently, the district court erred by dismissing Rivera's state law defamation claim because Amtrak may be liable under California law for its employees' allegedly defamatory statements.
 
 B. Leave to Amend
 
 25
 The district court initially dismissed Rivera's state law defamation claim against Amtrak because it found that any statements attributable to Amtrak were absolutely privileged. At that time, the district court also found that Rivera's state law defamation claims against the individual defendants were preempted by FELA. The district court therefore dismissed Rivera's state law defamation claims against the individual defendants and allowed Rivera to replead those claims under FELA.
 
 
 26
 The district court granted summary judgment on Rivera's FELA defamation claims against the individual defendants because no cause of action against individuals is available under FELA. The district court also denied Rivera's request, made in his opposition to defendants' motion for summary judgment, to amend his First Amended Complaint to assert a FELA defamation claim against Amtrak. The district court denied Rivera's request as futile because the only statements attributable to Amtrak were privileged and because Amtrak could not be liable for statements made by the individual defendants under respondeat superior. The district court also denied the request because of the advanced stage of the proceedings.
 
 
 27
 Because we find that the district court erred in dismissing Rivera's state law defamation claim against Amtrak, we need not address the district court's denial of Rivera's motion to amend. Under the doctrine of respondeat superior, Amtrak may be held liable for the defamatory statements made by the individual defendants. Rivera therefore should have been permitted to proceed with his state law defamation claim against Amtrak. By now allowing him to proceed with that claim, we obviate any need to address the district court's denial of Rivera's motion for leave to amend. See Omega Envtl., Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1166 n. 12 (9th Cir.1997).
 
 C. Individual Defendants
 
 28
 The Supreme Court's analysis of FELA in Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 556, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) supports a finding that a claim for defamation is unavailable under FELA. In Gottshall, the Supreme Court held that damages for negligent infliction of emotional distress are available under FELA. See id. at 549-50, 114 S.Ct. 2396. However, the Court specifically applied the "zone of danger" test in order to determine a plaintiff's eligibility for damages as a result of negligent infliction of emotional distress. See id. at 554-55, 114 S.Ct. 2396. The Supreme Court chose to apply this test because it emphasizes the original intent of FELA to compensate for physical injury. See id. at 555-56, 114 S.Ct. 2396 ("FELA was (and is) aimed at ensuring the security of the person from physical invasions or menaces.") (citation and internal quotation marks omitted). The Court limited recovery to workers within the zone of danger of a physical impact who suffered emotional injury "caused by fear of physical injury" to themselves. Id. at 556, 114 S.Ct. 2396. In Gottshall, the Supreme Court rejected the claim of another plaintiff because his complaints were stress-related and he could show no physical impact leading him to fear for his physical safety. See id. at 558, 114 S.Ct. 2396.
 
 
 29
 In light of the historical interpretation of FELA as intended to compensate for injury caused by a physical phenomenon, defamation is not properly pled as a FELA claim. Accordingly, the district court erred when it ruled that Rivera's state law defamation claim was preempted by FELA and ordered Rivera to replead his defamation claim against the individual defendants under FELA. Rivera should be allowed to proceed with a state law claim for defamation against the individual defendants. Of course, upon remand the district court may decline to exercise supplemental jurisdiction over the remaining state law defamation claim. See Big Bear Lodging Ass'n v. Snow Summit, Inc., 182 F.3d 1096, 1106 n. 9 (9th Cir.1999).
 
 
 30
 The district court erred as a matter of law in holding that Rivera's defamation claim was preempted by FELA. See Gottshall, 512 U.S. at 556, 114 S.Ct. 2396. A claim for defamation does not result in a physical impact and is therefore not the type of claim that FELA was designed to encompass. See id. at 555-56, 114 S.Ct. 2396; see also Smith v. Union Pacific Railroad, 236 F.3d 1168, 1172 (10th Cir. 2000) (rejecting plaintiff's emotional distress claim under FELA because there was no physical impact causing the disorder); Crown v. Union Pacific Railroad, 162 F.3d 984, 985-86 (8th Cir.1998) (holding that employee could not state a claim for negligent infliction of emotional distress under FELA without a showing of physical impact). Rivera should therefore be permitted to maintain his defamation claim as a state law cause of action against the individual defendants.
 
 
 CONCLUSION
 
 
 31
 The district court's order dismissing Rivera's wrongful termination claim is AFFIRMED. The district court's orders dismissing Rivera's defamation claims are REVERSED and REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 32
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED. Each party is to bear its own costs on appeal.
 
 
 
 Notes:
 
 
 *
 The Honorable Bobby R. Baldock, Senior United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation
 
 
 [1]
 Rivera has not appealed the district court's other rulings
 
 
 [2]
 As a federal court exercising supplemental jurisdiction, we apply California law to Rivera's claimsSee Bird v. Lewis & Clark College, 303 F.3d 1015, 1023 (9th Cir.2002).