Norman PARSONS, et al, Plaintiffs,

v.

UNITED STATES of America, et al, Defendants.

No. CIV–F–5215OWW.

United States District Court, E.D. California.

Oct. 20, 2004.

Steven Grant Hanson, Law Offices of Steven G. Hanson, Stockton, CA, for Plaintiffs.

Jennifer A. Giaimo, United States Department of Justice, Tax Division, Washington, DC, for Defendants.

## ORDER RE: MOTION FOR SUMMARY JUDGMENT

WANGER, District Judge.

Plaintiffs claim unconstitutional execution of a search warrant and excessive force in holding an occupant in the course of executing the warrant. Defendants move for summary judgment. Doc. 85, Defendants' Memo. Plaintiffs oppose the motion. Doc. 90, Plaintiffs' Opposition.

### I. *Background*

The Plaintiffs in this case are Norman Parsons and Mary Vincent. Mr. Parsons is the manager of Global Business Services. Ms. Vincent is the manager of two companies: Vincent & Associates and Asher Personnel. The Plaintiffs maintain the action individually and on behalf of the companies they manage. Both Mr. Parsons and Ms. Vincent maintained offices at 333 W. Shaw Ave (Suites 18 and 15 respectively). Both had business dealings with Anderson Ark and Associates, an organization under investigation for criminal activi-

ty. The Defendants in this case are the U.S. Internal Revenue Service ("IRS") and the IRS agents ("IRS Agents")[1] who searched Plaintiffs' offices pursuant to a search warrant. The IRS Agents are sued in their individual and official capacities. The IRS is a valid defendant (sovereign immunity waived) as Plaintiffs have filed an administrative tort claim, fulfilling the requirements of the Federal Tort Claims Act, 28 U.S.C. § 2675.

Plaintiffs filed the original complaint in this case on February 26, 2002, an amended complaint on May 14, 2002, a second amended complaint on December 17, 2002, and a third amended complaint on May 12, 2003. The third amended verified complaint ("TAVC") asserts claims under the fourth and fourteenth amendments of the U.S. Constitution for (1) excessive, unlawful and unreasonable search and seizure and excessive unlawful and unreasonable use of force, and (2) denial of due process and equal protection under the law. By Order of September 11, 2003, Plaintiffs' TAVC was clarified; Plaintiffs are proceeding solely on claims of unlawful intrusiveness or excessive force. Doc. 66.

The claims arise out of execution of a search warrant by the IRS Agents on Plaintiffs' business premises to search and seize material related to Anderson Ark and Associates. At approximately 6:03 AM on February 28, 2001, the IRS Agents, accompanied by Fresno County Sheriff Deputies and a locksmith, knocked on the door to announce themselves. Doc. 87, Ex. 3, IRS Memo by Sean Robertson. Receiving no response, the IRS Agents had the locksmith drill the lock. The entry at 6:19 AM triggered an alarm; the

---

1. According to the declaration of Susan Bradby, the 17 agents that executed the search warrant are Susan Bradby, Dawn Mertz, Anita Steiner, Adrian Smedley, Amjad Qaqish, Anthony Ghio, Erwin Rodgers, Larry Murphy, Baron Fong, Cecilia Braga, Arlette Lee, Jill Aitchison, Sean Robertson, Albert Kao, Mark Yamanaka, Mark Kodur, and Curtis Wong. Doc. 86, Ex. A, IRS Memo by Susan Bradby.

alarm company contacted Ms. Vincent by phone. Ms. Vincent left for her office and arrived at 6:45 AM.

Defendants claim that Ms. Vincent voluntarily agreed to be interviewed, and afterwards voluntarily chose to remain while the search warrant was being executed. Doc. 85, Defendants' Memo, at 3:7–9. Ms. Vincent contends that upon her arrival at 6:45 AM, IRS Agents "unsnapped their holsters and took hold of their weapons and escorted me to my office." Doc. 91, Vincent Declaration, at 3:2–3. Nevertheless, Plaintiffs admit that "[a]t no time did the officials conducting the search remove their guns from their holsters." Doc. 95, Plaintiffs' Response to Defendants' Statement of Facts, Fact 15. Ms. Vincent claims that the IRS Agents "forced [her] to remain on the premises," and "refused to allow [her] to leave until [she] was interviewed." Doc. 91, Vincent Declaration, at 3:22–23. She also claims that she "was physically restrained in a chair while the search proceeded and [she] was not allowed to assist or aide (sic) in the search." Doc. 56, TAVC, at 7:22–25. The interview ended before 8:00 AM. Ms. Vincent admits that she voluntarily decided to stay after the end of her interview. Doc. 91, Vincent Declaration, at 4:7–8.

At approximately 9:00 AM (or some other time after the end of the interview), Phyllis Sheppard, a temporary employee of Ms. Vincent, arrived. Ms. Sheppard agreed to be interviewed by the IRS. After the interview, Ms. Vincent spoke with her. Ms. Sheppard left shortly afterward. Ms. Vincent left at around 10:00 AM. She was contacted at home by the IRS Agents at 4:00 PM that the search was completed. She arrived at the office at 4:07 PM and was present when the IRS Agents left the premises.

In the course of litigation, Ms. Vincent was deposed on April 20, 2004. Doc. 87, Ex. 5, Mary Vincent Deposition. She in-

voked the Fifth Amendment right to avoid self-incrimination in response to questions concerning the raid of February 28, 2001 raid. It appears that Ms. Vincent was instructed by Mr. Hanson beforehand to raise her Fifth Amendment rights in response to all questions. *See* Doc. 87, Ex. 5, Mary Vincent Deposition, at 8:22–9:7; Doc. 87, Ex. 4, Norman Parsons Deposition, at 17:22–18:1 ("Mr. Hanson: At this point I think he's going to probably exercise his right to not speak any further. And for your information, Miss Vincent has decided she is going to exercise her Fifth Amendment all the way so just to let you know."). Ms. Vincent is under investigation by the IRS for suspected violation of 26 U.S.C. § 6700 (abuse of tax shelter) and the subject of a federal grand jury investigation in Fresno (Number GJ 02A–08–04) for suspected tax evasion. For those criminal matters, she has retained separate counsel. Doc. 91, Vincent Declaration, at 2:11–12.

At the August 31, 2004 oral arguments, Plaintiffs and Defendants were asked to brief three additional questions: (1) whether the warrant was reasonably served at night time; (2) whether the breaking of the internal locks was reasonable; and (3) whether Plaintiff Vincent was unreasonably detained. Any additional discovery that was needed to answer these question was to be completed by September 15, 2004. Supplemental briefs were to be submitted by September 25, 2004. Further oral arguments were to be heard October 18, 2004.

Defendants submitted a supplemental memorandum, as well as a declaration, to address these questions. *See* Doc. 101 ("Defendants' Supplemental Memo"); Doc. 102 ("Giaimo Declaration"), both filed Sept. 24, 2004. Plaintiff submitted supplemental opposition addressing these questions. *See* Doc. 99 ("Plaintiffs' Supple-

mental Opposition"), filed Sept. 14, 2004. Although not permitted, Plaintiffs also submitted a rebuttal to Defendants' supplemental brief. *See* Doc. 104 ("Plaintiffs' Rebuttal"), filed Oct. 4, 2004.

## II. *Statement of Material Facts*

1) On February 28, 2001, IRS agents executed a search warrant that authorized them to search the offices of Global Business Services and Vincent and Associates.

2) The agents arrived at the building at 6:05 a.m.

3) Upon arrival, the agents knocked and announced their identity and intent. They waited approximately two minutes, but not one responded to their knock.

4) Since no one answered their knock, the agents had a locksmith open the door by drilling the lock.

5) The agents entered the offices to be searched at approximately 6:20 a.m.

6) No one was present in the offices at the time the agents entered.

7) At approximately 6:45 a.m., Mary Vincent arrived at the office.

8) IRS agents interviewed Mary Vincent. Following the interview, she was permitted to leave, but if she chose to stay, Ms. Vincent was required to stay in the reception area rather than moving about the offices while the agents were conducting the search.

9) Phyllis Sheppard, a temporary secretary working for Mary Vincent, arrived around 9:00 a.m.

10) Phyllis Sheppard agreed to be interviewed by the IRS, and at the conclusion of the interview, she left the office.

11) Mary Vincent left the office at approximately 10 a.m.

12) At her request, Mary Vincent was notified when the search was completed. She was telephoned at approximately 4:00 p.m.

13) Mary Vincent returned to her office at 4:07 p.m., and was there when the agents left.

14) At no time was Mary Vincent physically restrained.
DISPUTED.

15) At no time did the officials conducting the search remove their guns from their holsters.

16) At no time was Mary Vincent held at gunpoint.
DISPUTED. While the officials did not remove their guns from their holsters, they did unsnap their holsters and take hold of their weapons when Ms. Vincent first arrived.

17) The lock to the offices were replaced and/or repaired at the government's expense.
DISPUTED. The government did fix the lock to Mary Vincent's office but not the locks of Global Business Services.

## III. *Legal Standards*

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *California v. Campbell,* 138 F.3d 772, 780 (9th Cir.1998). To defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id.* A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th

Cir.1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence must be viewed in a light most favorable to the nonmoving party. *Ind. Lumbermens Mut. Ins. Co. v. W. Or. Wood Products, Inc.*, 268 F.3d 639, 644 (9th Cir.2001), *amended by* 2001 WL 1490998 (9th Cir. 2001). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir.2000). However, if the nonmoving party has the burden of proof at trial, the moving party must only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of proof, the non-moving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *Triton Energy Corp.*, 68 F.3d at 1221. The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux*, 263 F.3d at 1076.

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

"In order to show that a genuine issue of material fact exists, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Rivera v. National Railroad Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir.2003) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505). If the moving party can meet his burden of production, the non-moving party "must produce evidence in response.... [H]e cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir.2003). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera*, 331 F.3d at 1078 (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir.2001)).

The more implausible the claim or defense asserted by the nonmoving party, the more persuasive his evidence must be to avoid summary judgment. *See U.S. ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1996). Nevertheless, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505. A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to find genuine factual issues. *See Abdul–Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir.1996).

## IV. *Discussion*

Plaintiffs' claim for unlawful intrusiveness or excessive force is based on two allegations: the Defendants should not have used force to break into Plaintiffs' offices; and Defendants should not have held Ms. Vincent by force against her will and forced her to answer their questions before allowing her to leave the premises.

### A. *Entry onto the Premises*

The central facts concerning the entry of the premises are uncontested. The IRS arrived early in the morning, announced their presence to serve a search warrant, and forced entry when they received no response after waiting two minutes. The parties disagree about the law.

#### 1. *Parties' Interpretations of Section 3109*

Defendants argue that they were authorized to use force to enter the building under 18 U.S.C. § 3109 ("The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."). Defendants allege that 18 U.S.C. § 3109 applies "to a locked commercial establishment 'at least at night.' *United States v. Phillips*, 497 F.2d 1131, 1132–33 (9th Cir.1974)." Doc. 85, Defendants' Memo, at 5:4–5. However, *Phillips* specifically dealt with a situation where the commercial establishment was occupied, and the police were seeking to arrest an occupant. 497 F.2d at 1133 ("An unannounced entry at midnight into an occupied and locked office building carries nearly as much potential for violence as an unannounced entry into a private residence.").

In this case, there is evidence that the IRS Agents knew the office was unoccupied at the time. Plaintiffs assert the IRS had conducted surveillance prior to serving the warrant, which would have apprised them of normal business hours. Doc. 91, Vincent Declaration, at 2:16–20. In addition, the IRS Agents came with a locksmith on February 28, 2001. The locksmith could not pick the lock and had to drill it, a process that took more than 10 minutes. Doc. 87, Ex. 3, IRS Memo of Wayne Anderson. A reasonable inference is that the locksmith was brought on the assumption that the offices would likely be empty.

Plaintiffs argue that when officers know or have reason to believe premises to be unoccupied, they have a general duty to attempt to contact the owner before forcing entry. See Doc. 90, Plaintiffs' Opposition, at 4:22–6:12. In this case, Plaintiffs propose that the IRS Agents could have contacted Ms. Vincent at home by phone or waited until normal business hours. Doc. 90, Plaintiffs' Opposition, at 5:7–12. Plaintiffs claim that though the IRS Agents did announce themselves, Section 3109's notice requirement is not satisfied by announcement at the door when officers know the premises are unoccupied. Doc. 90, Plaintiffs' Opposition, at 6:20–7:3.

#### 2. *Applicability of Section 3109*

When serving a search warrant on unoccupied premises, 18 U.S.C. § 3109 does not apply as it would not serve the goals Section 3109 seeks to promote. *Payne v. United States*, 508 F.2d 1391, 1393 (5th Cir.1975). The purpose of the notice requirement under Section 3109 are "(1) it reduces the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) it guards against the needless destruction of private property; and (3) it symbol-

izes the respect for individual privacy summarized in the adage that 'a man's house is his castle.'" *United States v. Bustamante-Gamez*, 488 F.2d 4, 9–10 (9th Cir. 1973) (citing *Miller v. United States*, 357 U.S. 301, 307, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958)).

The Third Circuit, in a case of first impression, found that a search warrant could be served on a home known to be unoccupied without first contacting the resident; such service of a search warrant did not violate the Fourth Amendment. See *United States v. Gervato*, 474 F.2d 40 (3rd Cir.1973). In that case, the police forced open the door to an apartment after observing the resident leave. Aside from an announcement at the door (directed at an empty apartment), no attempt was made to either contact the resident or the owner of the apartment building who was next door. *United States v. Gervato*, 474 F.2d 40, 41 (3rd Cir.1973). The Third Circuit did note that an announcement was made formally made by the police before forcing open the door. The conclusion that a search warrant can be validly served on an empty building has been widely accepted by the courts. See, e.g. *Payne v. United States*, 508 F.2d 1391, 1393 (5th Cir.1975); *United States v. Stefonek*, 179 F.3d 1030, 1034 (7th Cir.1999); *United States v. Agrusa*, 541 F.2d 690, 698 (8th Cir.1976); *United States v. Chubbuck*, 32 F.3d 1458, 1460 (10th Cir.1994). Absent

In this case, there was no violation of either Section 3109 or the Fourth Amendment. The IRS Agents complied with the notice requirements of Section 3109, making the search valid if the building had turned out to be occupied. As the premises were unoccupied, Section 3109 does not apply and forced execution of a warrant on an empty building without giving actual notice to the owner does not violate the Fourth Amendment.

## B. Use of Force to Restrain Ms. Vincent

■ Plaintiffs also claim that excessive force was used to restrain Ms. Vincent once she arrived at her office. The facts surrounding the claim are contested and Plaintiffs' allegations are unclear. Defendants assert: "At no time did the official conducting the search remove their guns from their holster. At no time was Mary Vincent held at gunpoint." Doc. 84, Defendants' Statement of Facts, Facts 15 and 16. Plaintiffs admit that the IRS Agents never removed their guns from their holsters, but claim that Ms. Vincent was nevertheless "held at gunpoint." See Doc. 95, Plaintiffs' Response to Statement of Facts, Facts 15 and 16. She claims that upon her arrival at the office at 6:45 AM, IRS Agents "unsnapped their holster and took hold of their weapons and escorted me to my office. The agents made it clear by their actions and words that I was being forcibly detained by threat of the use of their weapons, i.e., at gunpoint, and/or any other force they chose to employ." Doc. 91, Vincent Declaration, at 3:2–5. The IRS Agents then "forced [her] to remain on the premises," and "refused to allow [her] to leave until [she] was interviewed." Doc. 91, Vincent Declaration, at 3:22–23.

### 1. Admissibility and Value of Ms. Vincent's Statements

Though Ms. Vincent asserted her Fifth Amendment right to avoid self-incrimination in her deposition, she has submitted a declaration in opposition to this summary judgment motion. The legal implications of silence arising from invocation of Fifth Amendment rights need not be examined since Plaintiffs have provided Ms. Vincent's declaration. Defendants seek to have the declaration stricken since it has been submitted at the last minute and by her exercise of privilege Ms. Vincent avoided cross-examination. Doc. 96, De-

fendants' Reply, at 3:12–13. Plaintiffs respond that they offered to provide Ms. Vincent for a second deposition on the specific matter of the alleged use of force in detaining Ms. Vincent, which Defendants declined. Doc. 92, Hanson Declaration, at 1:27–2:3. Plaintiffs also note that Ms. Vincent verified the TAVC.

Ms. Vincent frustrated the deposition by her invocation of the Fifth Amendment. An adverse inference can be drawn when a civil litigant invokes a privilege to avoid giving testimony. *See Doe by & through Rudy–Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir.2000) (finding "in civil proceedings adverse inferences can be drawn from a party's invocation of this Fifth Amendment right" not to testify); *see also Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (finding "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"). She now submits a hearsay declaration, which denies Defendants their right of cross examination under the Sixth Amendment. She now offers to be deposed, and Defendants decline. A conditional offer to testify limiting the scope of testimony does not have to be accepted by an adverse party nor does it satisfy the Sixth Amendment.

Plaintiffs also seek to rely on the TAVC as an affidavit. Doc. 90, Plaintiffs' Opposition, at 9:8–12. Ms. Vincent verified under penalty of perjury that the contents of the TAVC are "true and correct to the best of my knowledge, except to those things which I rely upon information and belief, and as to those things I believe them to be true and correct." Doc. 56, TAVC, at 12. While verified complaints are valid as an affidavit for summary judgement, they must be based upon personal knowledge and not just belief. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir.1995). A

statement based on "information and belief" does not raise a triable issue of fact. *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir.1991). Each statement from the TAVC on which Plaintiffs seek to rely will have to be evaluated to determine if Ms. Vincent had personal knowledge.

The pertinent part of the TAVC states that "[Plaintiff] was held a(sic) gun point by the agents attending the search of her office. Plaintiff was informed that she could not leave the premises without defendants' permission, and if she did so she would not be allowed access back on to the premises under any conditions or circumstances. Plaintiff remained in the office during the search and raid under gunpoint and the excessive use of force by the defendants. Plaintiff was not allowed to aide (sic) or assist in executing the search warrant in a reasonable manner. In fact, plaintiff was physically restrained in a chair while the search proceeded and plaintiff was not allowed to assist or aide in the search." Doc. 56, TAVC, at 7:17–21. As Plaintiffs assert, this statement is based on personal knowledge. Doc. 90, Plaintiffs' Opposition, at 9:8–10.

The only evidence Defendants provide are self-serving affidavits and declaration. "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). If a "non-moving party at summary judgment went one step beyond conclusory allegations to provide at least some factual explanation to controvert the moving party's evidence," then the affidavit is sufficient to raise a triable issue of fact. *Playboy Enters. v. Chen*, 45 U.S.P.Q.2d 1400, 1411 (C.D.Cal.1997).

### 2. Value of Ms. Sheppard's Deposition

Defendants assert that the declaration of Ms. Sheppard contradicts Ms. Vincent's version of events. See Doc. 96, Defendants' Reply, at 4:1–9. Ms. Sheppard has no personal knowledge of the relevant interactions between the IRS Agents and Ms. Vincent. Ms. Sheppard claims to have arrived around 8:00 AM on February 28, 2001. Doc. 87, Ex. 6, Declaration, at 12:14–15. The parties have submitted that Ms. Sheppard arrived around 9:00 AM as an undisputed material fact. Doc. 95, Plaintiff's Response to Statement of Facts, Fact 9. Ms. Vincent's claims about the use of force against her appear to arise from her interactions with the IRS Agents upon her arrival at the office and soon thereafter. After being escorted to her office and being questioned, Ms. Vincent admits that she was later informed that she could leave, but would not be allowed back in while the search was ongoing. Doc. 91, Vincent Declaration, at 3:25–26. Ms. Sheppard arrived after Ms. Vincent was told she was free to leave.

### 3. Physical Restraints

In the TAVC, Ms. Vincent claims that she was "physically restrained in a chair while the search proceeded and [she] was not allowed to assist or aide (sic) in the search." Doc. 56, TAVC, at 7:22–25. However, her later declaration omitted any mention of physical restraints. Instead, she states that she was "forced to remain on the premises, held by armed guards." Doc. 91, Vincent Declaration, at 3:22–23. In addition, she admits that she "assist[ed] the agents in downloading [her] computer." Doc. 91, Vincent Declaration, at 3:27. It appears that her declaration and her statements in the TAVC contradict each other. A party "cannot raise a triable issue of material fact with a self-serving declaration that contradicts [her] prior statements." *Gallardo v. Reinnnecius,*

CIV–F–97–6111, 1998 U.S. Dist. LEXIS 18495, at *37–38 (E.D.Cal., Aug. 14, 1998).

Plaintiffs offer no other evidence, nor do they describe the nature of any physical restraints. Plaintiff elected to stay on the premises after the agents were through with her. Defendants offer the declaration of Susan Bradby, IRS Agent in charge of executing the search warrant, who states that "[a]t no time was [Ms. Vincent] physically restrained." Doc. 86, Bradby Declaration, at 2:3–4. Absent any factual elaboration and given the gap between her two statements, it is unclear whether Ms. Vincent was physically held in the chair (physical force used to hold her in a chair) or just told to sit down (detained under guard). Under either scenario the agents were authorized to restrain her movements at the office during the execution of the search warrant and for officer safety. Plaintiffs have offered insufficient evidence to raise a material issue of disputed fact whether Ms. Vincent was physically held in a chair.

### 4. Use of Guns

Ms. Vincent still claims that she was held at "gunpoint" despite admitting that the IRS Agents *never un-holstered* their guns. Specifically, she claims that they "made it clear by their actions and words that I was being forcibly detained by threat of the use of their weapons, i.e., at gunpoint, and/or any other force they chose to employ." Doc. 91, Vincent Declaration, at 3:3–5. Plaintiffs' claim is a conclusory statement of her opinion that a "threat of force" was used to detain her. In executing a search warrant, the IRS Agents had "the limited authority to detain the occupants of the premises while a proper search [was] conducted." *Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

This issue has already been addressed in previous orders. "Having alleged only that IRS agents exhibited weapons, used stentory commands, and detained Plaintiff and her bird in a hostile or threatening manner is insufficient to state a claim for excessive force by federal law enforcement officers. Out of an abundance of caution, Plaintiffs are given *final* leave to amend their complaint." Doc. 55, April 30, 2003 Order, at 7:6–11.

There is no evidence that force that violates the Fourth Amendment was used against Ms. Vincent during the search, sufficient to raise a material issue of disputed fact. In an abundance of caution, an opportunity was given for parties to conduct additional discovery and submit supplemental briefs on this question, as well as two others that arose during oral arguments. No further evidence has been provided by Plaintiffs.

### 5. Additional Briefing

#### A. Time of the Service of the Warrant

■ Plaintiffs and Defendants were asked to provide supplemental briefing on whether the search warrant was served at an unreasonable time. They do not dispute that the warrant in this case was executed at 6:05 a.m. *See* Plaintiffs' Supplemental Opposition at 1:24; Defendants' Supplemental Memo at 3:19.

Plaintiffs contend that, since the warrant in this case was served outside the hours of 7:00 a.m. and 10:00 p.m., "good cause must exist to authorize execution of a warrant outside the statutory time frame, and such cause must be supported with specific facts which find that such service is warranted." Plaintiffs' Supplemental Opposition at 2:22–25. Plaintiffs allege that no good cause and no facts have been offered. *Id.* at 2:25–28. Plaintiffs rely solely upon the warrant requirements under California State law in advancing these allegations. *See id* at 1:28–2:28; *see*

*also* Cal. Pen.Code § 1533 ("Upon a showing of good cause, the magistrate may, in his or her discretion, insert a direction in a search warrant that it may be served at any time of the day or night. In the absence of such a direction, the warrant shall be served only between the hours of 7 a.m. and 10 p.m.").

Defendants allege that, since "this is a federal warrant," it is governed by the requirements of the Fed. R.Crim. Proc. Defendants' Supplemental Memo at 3:20–23, 4:2–3. They further allege that "[s]tate law in inapplicable .... [and that] federal, not state law governs the validity of the warrant." *Id.* at 4:2, 5–7. If federal law governs, daylight is defined as "the hours between 6:00 a.m. and 10:00 p.m. according to local time." Fed.R.Crim.P. 41(a)(2)(B). Since the warrant was served between these times, Defendants allege that " 'good cause' or 'exceptional cause' need not be shown to justify the execution of a federal search warrant between the hours of 6:00 a.m. and 10:00 p.m." Defendants' Supplemental Memo at 4:18–20.

Defendants are correct. This is a federal search warrant. It was issued by a federal judge. It is governed by the Fed. R.Crim.P. As a result, the service in this case occurred within the daylight hours as defined by federal law and no additional showing of cause is necessary.

#### B. Was Vincent Permitted to Leave the Premises

■ Following the August 30, 2004 hearing, Defendants deposed Plaintiff Vincent on September 13, 2004. Plaintiffs did not address this deposition or the request to provide a supplemental brief on whether Defendant Vincent was unreasonably detained.

When Vincent approached her building "two armed agents came toward [her] car [and] unbuckled their holsters ...." Gia-

mio Declaration at Ex A ("Vincent Deposition") at 10:10–11, filed Sept. 24, 2004. She also testified that all ten agents present were armed with guns which "were in their holsters at their waists." *Id.* at 21:23–24. She also testified that "no gun was completely removed from the holster . . . ." *Id.* at 22:2–3; *see also id.* at 48:18–23.

After she had entered her building, Defendant Vincent volunteered to give the agents the passwords to her computers so they would leave them in her office so she could work on them later in the day. *Id.* at 12:19–25. She "assist[ed an] agent in obtaining information from each of the four computers . . . ." *Id.* at 15:25–16:3. Agents then interviewed Defendant Vincent. Of this interview, she "didn't feel like they were demanding . . . . [T]hey were being polite." *Id.* at 41:15–22. She characterized their conduct as "firm" but "[n]ot hostile." *Id.* at 44:4–5. There were no physical restrains placed on her person. *Id.* at 43:19–22; *see also id.* at 49:11–13. She was not "read [her] legal rights at any point during these discussions." *Id.* at 43:23–26. She never asked if she could leave the premises. *Id.* at 48:7–17. At no time did the agents tell her she couldn't leave the premises. *Id.* at 48:24–49:2. She doesn't recall anyone telling her she couldn't leave. *Id.* at 49:6–8. That being said, she did "feel" that she was not fee to leave until "[a]fter the interview . . . ." *Id.* at 49:25–50:5. According to her, the only reason she felt like she couldn't leave was that the agents "were armed," which caused her to "feel" she "didn't really . . . ha[ve] much of a right to do anything except what they requested." *Id.* at 53:9–14.

She testified that the agents, when they first took her into the room, told her she "could end the interview at any point that [she] wished." *Id.* at 51:10–11. She never told the agents she didn't want to be interviewed. *Id.* at 50:17–21. She did, however, decide at some point to "end" the interview, which lasted only "ten minutes." *Id.* at 51:8–9, 22. The interview ended upon her request. *Id.* at 52:16.

Based on Plaintiff Vincent's deposition, she only perceived herself forced to remain because the agents carried holstered guns. She testified that she aided agents, that they told her she could leave whenever she wanted, and that the interview ended upon her request. Plaintiff Vincent admits that she knew she was able to leave, consented to remaining, and ended the interview when she chose to.

When law enforcement officers detain a person but stop short of making an arrest, the Fourth Amendment mandates that the officers act reasonably in light of all the circumstances. *Desyllas v. Bernstine,* 351 F.3d 934, 939–40 (9th Cir.2003) (citing *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "For purposes of the Fourth Amendment, detention or seizure of a person occurs 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ' " *Id.* (quoting *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. 1868). " '[M]ere police questioning does not constitute a seizure.' " *Id.* (quoting *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). "Consensual encounters with police likewise do not constitute investigatory stops." *Id.* (citing *United States v. Kim,* 25 F.3d 1426, 1430 (9th Cir.1994)). " 'Questioning by law enforcement officers constitutes an investigatory stop only if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Id.* (quoting *Kim,* 25 F.3d at 1430).

Plaintiff Vincent herself indicates she believed she was "free to leave." With that belief, she ended the interview when

she felt she could better "respond to the questions later when I could refer to documents." Vincent Deposition at 52:7–10. The interview was ended at her request. The agents' questioning in this case does not constitute seizure or an investigatory stop. Plaintiff Vincent's Fourth Amendment rights were not violated in this case.

### C. Use of Excessive Force on the Internal Locks

■ During oral arguments, the question was raised as to whether the internal door was damaged during the service of the warrant. Plaintiffs allege that "[t]he locks to [their] offices were damaged to the extent that they were required to be replaced." Plaintiffs' Supplemental Opposition at 3:1–2. They further allege "[t]here is no question [their] locks were damaged to the point where even the government conceded they must be repaired, at least for the office of Mary Vincent." Id. at 3:6–7.

Defendants allege that "the Court already determined that the agents did not enter the premises in an unlawful manner and that drilling the locks was acceptable under the circumstances." Defendants' Supplemental Memo at 7:14–16. Defendants allege that "this court recognized ... [that] 'if no one responds to announcement of intent to enter to execute the warrant, officers are permitted to break to enter.'" Id. at 7:16–18. They allege that because the agents knocked and announced, and no one was there, "as this Court has already held, the drilling of the locks was permissible and, as a matter of law, does not amount to excessive force." Id. at 7:21–24.

Plaintiffs and Defendants do not address the question of whether there was a distinction between entering the external and internal locks. As Defendants' counsel noted in oral arguments, Plaintiffs had not alleged the damage to these internal locks as part of its complaint. In their supplemental brief, Plaintiffs argue that the use of force was generally excessive, but do not identify how the particular use of force used to open the internal doors alone was unlawful.

Although not directly applicable, the language of Section 3109 is helpful because it does not distinguish between entering an exterior or interior door:

> The officer may break open any *outer or inner door* or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (emphasis added). No case law has been cited that contradicts the explicit authorizing language of this statute or that indicates any distinction is drawn by the courts between exterior or interior doors. There was no violation of the Fourth Amendment in the use of force to open the interior doors.

### V. Conclusion

At the hearing, Plaintiff requested the opportunity to "amend." Under the rules of Civil Procedure, it was incumbent upon Plaintiffs to provide all evidence they had to oppose the motion. This case has been pending two years. When asked what "amendment" he would make, Plaintiff's counsel answered that "he did not know."

For all the reasons above stated:

IT IS ORDERED that Defendants' motion for summary judgment is GRANTED. Judgment shall be entered for Defendants and against Plaintiffs.